UNITED STATES of America,
Appellant–Cross–Appellee,

v.

Gregory FERGUSON, aka "Black Greggo," Defendant–Appellee–Cross–Appellant.

Docket Nos. 99–1262(L), 99–1302, 99–1322, 99–1324(XAP) and 99–1398.

United States Court of Appeals,
Second Circuit.

Argued June 5, 2000.

Decided March 23, 2001.

Robin L. Baker, Assistant United States Attorney, (Mary Jo White, United States Attorney, Mary Mulligan, Ira M. Feinberg, Assistant United States Attorneys, on the brief) New York, NY, for Appellant–Cross–Appellee.

Before: WALKER, Chief Judge, POOLER, Circuit Judge, and HADEN, District Judge.*

Chief Judge WALKER concurs in part and dissents in part in a separate opinion.

POOLER, Circuit Judge:

The government appeals from the May 25, 1999, order of the United States District Court for the Southern District of New York (Shira A. Scheindlin, *J.*) granting the motion of defendant Gregory Ferguson for a new trial pursuant to Fed. R.Crim.P. 33. In addition, Ferguson cross-appeals the district court's denial of his motion for judgment of acquittal pursuant to Fed.R.Crim.P. 29.

In this case, the district court exercised a rarely used power and granted a new trial to a defendant convicted of very serious crimes. We see no indication that the district court granted this relief lightly. While critics may consider a new trial for Ferguson to be a waste of resources and based on legal technicalities, we must take a broader view. No harm and only good can come to our system of justice where we require the government to supply competent, satisfactory and sufficient evidence to prove an element of criminal liability. To let a verdict stand on anything less is indeed a manifest injustice, and we share the district court's concern that a defendant innocent of racketeering may nonetheless have been convicted of that crime.

Vivian Shevitz, Katonah, NY, for Defendant–Appellee–Cross–Appellant Gregory Ferguson.

* Hon. Charles H. Haden II, Chief United States District Court Judge for the Southern District of West Virginia, sitting by designation.

## BACKGROUND

Ferguson was one of 13 defendants that the government prosecuted in connection with its investigation of the Power Rules gang. According to the government, Power Rules operated on Union Avenue in the South Bronx between 1986 and 1997. The gang sold crack, powder cocaine and heroin. Power Rules members frequently used violence to facilitate their drug operations and increase their power through fear and intimidation, and they earned money performing contract murders. Miguel Guzman led the gang beginning in 1988. Gregory Ayala initially was a Power Rules member who worked a drug spot selling heroin and crack, but in late 1995 he began dealing directly with drug suppliers and formed his own gang, the Avenue St. John Boys. In late 1995 and early 1996, a war broke out between Power Rules and Avenue St. John Boys. According to the government, Guzman and his cohorts tried more than six times to shoot and kill Ayala. Many of these shootings took place in the streets, and the shootings often targeted Avenue St. John Boys members in addition to Ayala.

A federal grand jury returned an eighth superseding indictment on March 2, 1998, charging 13 defendants in 52 criminal counts stemming from their activities with Power Rules. The indictment charged Ferguson in eight counts with crimes including racketeering, conspiracy to violate racketeering laws, conspiracy to murder, attempted murder, use of firearms, and tampering with a witness and threatening court officers. The government characterized Ferguson as an enforcer for Power Rules who engaged in specific violent acts on its behalf. Specifically, counts 1 and 2 charged Ferguson and others with racketeering and conspiracy to racketeer, in violation of 18 U.S.C. §§ 1962(c) & 1962(d), respectively. Count 10 charged Ferguson and others with conspiracy to murder Ayala in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5). Count 11 charged Ferguson and Guzman with the attempted murder of Albert Mercado in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5). Counts 35 and 36 charged firearms offenses related to counts 10 and 11, respectively, in violation of 18 U.S.C. § 924(c). Count 51 charged Ferguson with witness tampering, in violation of 18 U.S.C. § 1512(b). Count 52 charged Ferguson with threatening deputy U.S. Marshals, in violation of 18 U.S.C. § 1503(a). The district court severed Count 52 prior to trial and ultimately dismissed it.

Trial of seven defendants, including Ferguson, took place between March 16, 1998, and June 12, 1998. During the trial, the government presented evidence that Ferguson and Power Rules members actively tried to kill rival gang leader Ayala. According to the government, on February 26, 1996, Ferguson and Power Rules members shot Albert Mercado, thinking he was Ayala. The government also tied Ferguson to two other incidents in which he and Power Rules members searched for Ayala in his neighborhood with the intent to kill him but were unable to locate him. One incident involved hiring an "O2" service car, and the other involved gang member David Rivera disguised in a Jamaican hat and fake dreadlocks. The government's evidence connecting Ferguson to these incidents largely came from cooperating witnesses, including David Rivera. Cooperating witness Luis Soto, who acted as a double agent between Power Rules and Avenue St. John Boys, also testified that one or two weeks after the Mercado shooting, he saw Guzman give money to Ferguson.

The jury convicted Ferguson of two counts: conspiracy to murder Ayala in aid of racketeering (count 10) and using and

carrying a firearm in connection with that offense (count 35), in violation of 18 U.S.C. §§ 1959(a)(5) and 924(c), respectively. The jury also convicted Guzman of 30 counts, convicted Edwin Rivera of 15 counts, and convicted Ayala of the four counts in which he was charged. We affirmed the convictions of these three defendants in a separate summary order. Of the remaining three trial defendants, the jury acquitted one and returned mixed verdicts regarding two others, who did not pursue direct appeals. Six of the 13 indicted defendants pleaded guilty after Judge Scheindlin granted a severance motion.

Ferguson made Rule 29 motions for judgment of acquittal at the close of the government's case and at the end of trial. The district court reserved decision and ultimately denied the motions at a conference on June 18, 1998. Ferguson filed a motion for a new trial pursuant to Rule 33. The district court granted the motion in a written decision. *See United States v. Ferguson*, 49 F.Supp.2d 321 (S.D.N.Y. 1999). Ferguson was detained during trial, and he remains in detention. A panel of the Second Circuit vacated Judge Scheindlin's bail order, and we extended that panel's decision at the time of oral argument.

## DISCUSSION

### I. Standards of review

■■■ We review the decision of the district court to grant a new trial for abuse of discretion. *See United States v. Scotti*, 47 F.3d 1237, 1241 (2d Cir.1995).[1] Our review of Judge Scheindlin's decision therefore is limited, and we are mindful that a judge has not abused her discretion simply because she has made a different decision than we would have made in the first instance. Indeed, it is on this simple yet critical matter that we find fault with the analysis of the dissent, which has chosen to review the trial evidence anew rather than apply the lens of abuse of discretion to Judge Scheindlin's decision. Rather than engage in a debate with the dissent, we merely note, as we do throughout this opinion, that the district court's holding is not an abuse of discretion even though we may have decided differently if we were the trial judge.

■■■ Just as our standard of review shapes our decision in this appeal, the standards that guide a trial court's Rule 33 analysis shape its review of the trial evidence and the outcome of defendant's Rule 33 motion. Rule 33 itself states that "the court may grant a new trial to [a] defendant if the interests of justice so require." Fed.R.Crim.P. 33. The rule by its terms gives the trial court "broad discretion ... to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir.1992). The district court must strike a balance between weighing the evidence and credibility of witnesses and not "wholly usurp[ing]" the role of the jury. *Autuori*, 212 F.3d at 120. Because the courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, "[i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of

---

1. The government suggests that a more stringent standard of review may be appropriate in Rule 33 cases involving a ruling that the verdict was against the weight of the trial evidence rather than a ruling that a jury instruction was erroneous, which was the case in *Scotti*. A change in circuit law is unwarranted. *See United States v. Autuori*, 212 F.3d 105, 120 (2d Cir.2000) (applying without discussion abuse of discretion standard to Rule 33 case concerning weight of the evidence).

credibility assessment." *Sanchez*, 969 F.2d at 1414. An example of exceptional circumstances is where testimony is "patently incredible or defies physical realities," although the district court's rejection of trial testimony by itself does not automatically permit Rule 33 relief. *Id.*

■ The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice. *See Sanchez*, 969 F.2d at 1414. The trial court must be satisfied that "competent, satisfactory and sufficient evidence" in the record supports the jury verdict. *Id.* (internal quotation marks omitted). The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. *See id.* "There must be a real concern that an innocent person may have been convicted." *Id.* Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority "sparingly" and in "the most extraordinary circumstances." *Sanchez*, 969 F.2d at 1414. Judge Scheindlin properly cited these standards in her Rule 33 decision, and we see no indication that she failed to follow them in her analysis.

## II. Grant of a new trial

The government argues that the district court abused its discretion in setting aside a jury verdict finding that Ferguson participated in the conspiracy to murder Ayala with a motive necessary to bring the crime within the scope of the racketeering statute. According to the government, the jury could have found beyond a reasonable doubt that Ferguson acted with any one of three motives: to gain entrance to the Power Rules enterprise, to increase or maintain his position in the Power Rules enterprise, or for pecuniary gain. Ferguson contends that the government abandoned the first two motive theories during the course of the trial and that the evidence concerning pecuniary gain was so slight as to be insufficient and incompetent. All three motives were in the indictment and jury charge.

### A. Section 1959 standard

■ Section 1959 punishes defendants who commit violent crimes in aid of racketeering activity, and it contains a motive requirement. *See* 18 U.S.C. § 1959(a). Defendant's motive must be receiving payment or promise of payment of anything of pecuniary value from the racketeering enterprise or "gaining entrance to or maintaining or increasing position" in the enterprise. *Id.* The scope of a pecuniary motive is fairly self-explanatory. With respect to the two other motives, "[s]elf-promotion need not have been the defendant's only, or even his primary, concern, if [the criminal act] was committed 'as an integral aspect of membership' in the enterprise." *United States v. Thai*, 29 F.3d 785, 817 (2d Cir.1994) (quoting *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir.1992)). The government satisfies the motive requirement if "the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." *Concepcion*, 983 F.2d at 381. Section 1959 reaches defendants associated with racketeering enterprises who may not be members but who participate in the organization's activities with the aspiration of becoming members. *See United States v. Polanco*, 145 F.3d 536, 540 n. 2 (2d Cir.1998), *cert. denied*, 525 U.S. 1071, 119 S.Ct. 803, 142 L.Ed.2d 664 (1999); *see also United States v. Malpeso*, 115 F.3d 155, 159 n. 1, 164 (2d Cir.1997).

## B. Membership motives

Judge Scheindlin held that during trial the government abandoned the motive theories of gaining entrance to Power Rules and increasing or maintaining position in the gang. *See Ferguson,* 49 F.Supp.2d at 325. The government argues that this finding was erroneous. Despite her abandonment finding, Judge Scheindlin went on to consider the evidence supporting the membership-related motives. For the purposes of this opinion, therefore, we will assume that the government did not waive these theories of criminal liability. Judge Scheindlin held that there was no credible evidence that Ferguson was a member of Power Rules or sought to become a member of Power Rules. *Id.* at 327–28. Based on the trial evidence, the district court held that "[a]t most, the jury found that Ferguson participated in two failed attempts to find and kill Ayala" and "[t]his does not rise to the level of activity necessary to support a finding of membership or a desire to become a member." *Id.* at 328.

On appeal, the government argues that Ferguson was closely affiliated with Power Rules and acted with Power Rules members, using guns that gang leader Guzman supplied, to kill Ayala in order to protect the gang's core drug business. According to the government, Ferguson's motive was his affiliation with the gang "and his desire to maintain and enhance his close association with its leaders." The district court did not abuse its discretion, however, when after it weighed the evidence, assessed witness credibility, and considered the jury's verdict, it concluded that the membership motives fell short.

Many of the cases upon which the government relies show circumstances in which a defendant who is an established member of a criminal enterprise acts in a way consistent with that membership. *See, e.g., United States v. Rahman,* 189 F.3d 88, 126–27 (2d Cir.) (*per curiam*), cert. denied, 528 U.S. 982, 120 S.Ct. 439, 145 L.Ed.2d 344 (1999); *United States v. Diaz,* 176 F.3d 52, 94–95 (2d Cir.), *cert. denied,* 528 U.S. 875, 120 S.Ct. 181, 145 L.Ed.2d 153 (1999); *Concepcion,* 983 F.2d at 382–83. For example, Concepcion was a "lieutenant" in the enterprise and initiated violence in connection with its narcotics business to maintain and increase his leadership position in the group. *See Concepcion,* 983 F.2d at 382–83. In *Diaz,* defendants were gang members who furthered that membership by killing an informant who could harm the gang's narcotics enterprise. *See Diaz,* 176 F.3d at 95. In this case, however, there was no direct evidence that Ferguson was a Power Rules member. The weight of the evidence showed that Ferguson was an outside hit man who did not belong to or seek to join Power Rules. Even the government so characterized Ferguson's role. During summation, the prosecutor told the jury that Ferguson had "more limited involvement" in gang activities and "his role essentially was that of a hired gun."

We recognize that evidence of a person's membership in or association with a criminal enterprise may be circumstantial because Section 1959(b)(2) defines enterprise in part as a "group of individuals associated in fact." 18 U.S.C. § 1959(b)(2). The government essentially relies on the same fact—Ferguson's participation in the effort to kill Ayala—to prove both his membership in Power Rules and his motive of furthering gang membership. According to the government, an important indication of Ferguson's membership is that he acted with Power Rules gang members and followed the orders of gang leader Guzman. If this were a Rule 29 motion, we might agree with the government that the facts sufficiently showed membership and actions in furtherance of

membership. However, the contrary view of the district court after weighing the evidence on a Rule 33 motion is not an abuse of discretion.

The government contends that the effort to murder Ayala not only was important to Power Rules but indeed was a core activity of the gang because killing a rival drug dealer was critical to protecting the gang's principal activity of selling drugs. The government assigns error to the district court's contrary holding and argues that Judge Scheindlin was wrong to discount all proof of the related Mercado shooting and consider only evidence of "two isolated occasions" of Ferguson's participation in the conspiracy to murder Ayala. *Ferguson*, 49 F.Supp.2d at 327. What the district court held, however, was that the *only* gang activity in which Ferguson participated was the conspiracy to kill Ayala, and this conduct by itself was insufficient to show his membership in Power Rules. *See id.* at 327. Although she viewed evidence of the Mercado shooting as "suspect" in light of the jury's acquittals on all counts related to this incident, *see id.* at 326 n. 8, Judge Scheindlin nonetheless examined the totality of the case as *Sanchez* requires. We cannot say that the district judge abused her discretion when she concluded that the weight of the evidence showed that Ferguson was an outside hit man and not a Power Rules member acting to further that membership. Ferguson may have participated in an important mission of Power Rules when he tried to kill Ayala, but that fact standing alone is not competent to show his racketeering motive.

While Ferguson need not have been a formal Power Rules member for criminal liability under Section 1959 to attach, there must be evidence that he acted with the expectation of gaining membership, *see Polanco*, 145 F.3d at 540 n. 2, *see also*

*Malpeso*, 115 F.3d at 159 n. 1, 164, or in furtherance of an intimate involvement with the enterprise. *See United States v. Muyet*, 994 F.Supp. 501, 516 (S.D.N.Y. 1998), *aff'd*, 225 F.3d 647 (2d Cir.2000). In order to show this sort of involvement, defendant must participate in the enterprise's activities. *See Malpeso*, 115 F.3d at 159 n. 1. For example, in *Muyet*, a defendant who was not a member of the gang was closely associated with it and criminally liable under Section 1959 because he participated in high-level meetings with gang leaders or at gang headquarters, planned violent crimes to support the gang's activities, and carried out crimes using his discretion. *See Muyet*, 994 F.Supp. at 516. Ferguson did not participate in Power Rules' core activities of drug sales, extortion or robbery, and none of those additional circumstances is present with respect to Ferguson. Indeed, other than the facts of Ferguson's participation in the Ayala murder conspiracy, the only trial evidence characterizing Ferguson as an associate of Power Rules rather than an outside hit man is the testimony of Luis Soto, who also defined an associate of Power Rules as a "friend of Miguel's [Guzman]." Judge Scheindlin did not abuse her discretion on this Rule 33 motion by deciding that this evidence as a whole was incompetent.

### C. Pecuniary gain motive

Judge Scheindlin also assessed the evidence supporting the pecuniary gain motive. On this issue, the government presented Luis Soto's testimony that gang leader Guzman gave Ferguson a wad of bills one to two weeks after the Mercado shooting and in front of Power Rules gang members. Gang members and Ferguson shot Mercado, thinking he was Ayala. Even though the district court credited the Soto testimony, it found the evidence insufficient and incompetent to sustain Fer-

guson's conviction because "Soto did not know the amount of the payment or its purpose" and "[n]o evidence was offered as to any discussions—preceding, contemporaneously, or after the payment—as to what the money was for." *Ferguson,* 49 F.Supp.2d at 329. The government contends that the circumstances of the payment support the inference that the money was a payment for attempting to shoot Ayala. The government also argues that because Guzman paid other shooters, a jury could infer that the payment to Ferguson was for a shooting. However, the circumstances of the payment to Ferguson are equally consistent with an innocent purpose or even a criminal purpose unrelated to Ayala. In addition, the other instances in which Guzman paid shooters involved successful "hits."

The district court did not abuse its discretion when it weighed the evidence of pecuniary motive and found the evidence unsatisfactory or insufficient to support the jury's finding of guilt beyond a reasonable doubt. The district court properly relied on *United States v. Muyet,* where we affirmed the Section 1959 conviction of "freelancer" Antonio Feliciano because there was evidence that he received a payment and that a witness overheard discussions connecting the payment to a violent crime. *See Muyet,* 994 F.Supp. at 519. That sort of connecting evidence is absolutely absent here and supports Judge Scheindlin's conclusion that blind deference to the jury verdict is unwarranted.

### D. Additional Rule 33 considerations

In her opinion, Judge Scheindlin cited additional considerations supporting her conclusion that a new trial is warranted. The district court noted a danger of prejudicial spillover from the RICO counts of which the jury acquitted Ferguson and the possible cumulative adverse effect of evidence of unproven charges. *See Ferguson,* 49 F.Supp.2d at 330. The district court even doubted its earlier decision refusing to sever Ferguson's trial from that of his co-defendants. *Id.* Finally, the district court stated that it most likely should have used a special verdict form identifying which Section 1959 motive the jury found and the "fact that one was not used here supports the need for a new trial." *Id.* at 324–25 n. 5. Because the district court did not abuse its discretion in granting a new trial based on incompetent motive evidence, we need not discuss these additional issues. In the event that the government pursues a new trial of Ferguson, he of course will not face trial on acquitted charges and he will be the sole defendant. Concerns about prejudicial spillover therefore are moot. With respect to the use of a special verdict form, that is a matter for the trial court's discretion in managing a new trial. Similarly, because all three of the motive theories passed Rule 29 sufficiency scrutiny, the government is not precluded from pursuing any or all of them at a new trial.

### III. Ferguson's cross-appeal

The government filed its appeal of Judge Scheindlin's order on June 7, 1999, pursuant to 18 U.S.C. § 3731. Ferguson did not appeal the district court's denial of his Rule 29 motion directly, but in a document dated June 9, 1999, defendant Ferguson filed a notice of cross-appeal purporting to raise the issue. Ferguson contends that Judge Scheindlin erred when she denied his Rule 29 motion, and he asks us to dismiss the indictment completely because the evidence supporting his convictions on counts 10 and 35 was insufficient. In his notice, defendant asserted pendent appellate jurisdiction. The government argues that we lack jurisdiction to hear the cross-appeal and that it is without merit. Because we agree that we lack jurisdiction to

hear Ferguson's cross-appeal, we do not consider it on the merits.

 Putting aside the issue of whether Ferguson's cross-appeal is timely pursuant to Fed. R.App. P. 4(b), we hold that he could not appeal Judge Scheindlin's decision denying his motion for a judgment of acquittal. We have jurisdiction to consider appeals from final decisions of the district courts, which are judgments of conviction and sentence in criminal cases. *See* 28 U.S.C. § 1291; *see also United States v. Aliotta*, 199 F.3d 78, 81 (2d Cir.1999). When Judge Scheindlin ordered a new trial, she necessarily vacated Ferguson's conviction from the first trial. Therefore, no judgment of conviction presently exists in this case. In addition, there is no pendent appellate jurisdiction in criminal cases. *See Abney v. United States*, 431 U.S. 651, 662–63, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

 Ferguson is attempting to appeal a collateral order, but denial of a Rule 29 motion does not fall within the narrow scope of the collateral order doctrine, which requires an appealable interim order to "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Aliotta*, 199 F.3d at 81–82. Three kinds of orders fall within these parameters: pretrial motions to dismiss indictments on double jeopardy grounds, motions to reduce bail, and motions to dismiss under the Speech or Debate Clause. *Id.* at 82 & n. 2. Ferguson's cross-appeal does not fall within any of these categories or meet any of the three criteria. Although at least two Second Circuit cases considered criminal appeals concerning non-final decisions, *see United States v. Gerena*, 869 F.2d 82, 83–84 (2d Cir.1989) (considering fair trial appeal because it overlapped appealable or-

der concerning defendants' privacy interests); *see also United States v. Russotti*, 717 F.2d 27, 31–32 & n. 2 (2d Cir.1983) (noting that defendant's "subsidiary" claim of prosecutorial vindictiveness may not be proper basis for interlocutory appeal except to extent it relates to double jeopardy), the facts of those cases were sufficiently unique to distinguish them from the present case. Ferguson's cross-appeal therefore is dismissed.

## CONCLUSION

For the forgoing reasons, we affirm the order of the district court granting Ferguson a new trial pursuant to Rule 33. We also dismiss Ferguson's cross-appeal as lacking appellate jurisdiction.

JOHN M. WALKER, Jr., Chief Judge, concurring in part and dissenting in part:

I join the majority's disposition of Ferguson's cross-appeal. However, because I believe the district court abused its discretion by empaneling itself as a thirteenth juror to overturn the jury verdict convicting Ferguson of conspiracy to commit murder in aid of racketeering, under 18 U.S.C. § 1959(a)(5), I would reverse the district court's grant of a new trial on that count. The evidence was fully sufficient, in my view, for a rational jury to find beyond a reasonable doubt that Ferguson was either 1) maintaining or advancing his position in Power Rules, or 2) acting for pecuniary gain as a hired "hit man." I therefore respectfully dissent from the majority's rejection of the government's appeal.

## I. The Rule 33 Standard

The majority correctly states that a district court may void a jury verdict and order a new trial under Fed.R.Crim.P. 33 only to prevent "manifest injustice." *See*

*United States v. Sanchez,* 969 F.2d 1409, 1414 (2d Cir.1992). The majority is also correct that, in proper circumstances, the district court may weigh the evidence and assess the credibility of witnesses. *See id.;* 3 Charles Alan Wright, *Federal Practice and Procedure* § 553, at 245–46 (2d ed.1982). Some courts in other circuits have gone so far as to suggest that Rule 33 envisions that a district court will assess the weight of the evidence sitting as a "thirteenth juror." *See, e.g., Brodie v. United States,* 295 F.2d 157, 160 (D.C.Cir. 1961); *United States v. Turner,* 490 F.Supp. 583, 593 (E.D.Mich.1979). The metaphor has been used in this circuit in at least one civil case. *See Binder v. Commercial Travelers Mut. Accident Ass'n of Am.,* 165 F.2d 896, 902 (2d Cir. 1948).

Like many legal metaphors, the "thirteenth juror" analogy lacks precision. It fails to convey the considerable circumspection that this court has required of district courts' decisions on Rule 33 motions based on the weight of the evidence. "It has long been our rule that trial courts 'must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses.' It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." *Sanchez,* 969 F.2d at 1414 (quoting *United States v. LeRoy,* 687 F.2d 610, 616 (2d Cir.1982)). As long as the evidence is sufficient to let the jury decide the question, the district court may not supplant the jury's finding of no reasonable doubt with its own finding that reasonable doubt

exists. Rather, a new trial should be granted "only in exceptional cases in which the evidence preponderates heavily against the verdict," 3 Wright, *supra,* § 553, at 248, such that the only rational outcome is acquittal.[1] "There must be a real concern that an innocent person may have been convicted." *Sanchez,* 969 F.2d at 1414; *see also United States v. Morales,* 902 F.2d 604, 606 (7th Cir.1990) (Posner, J.) (describing order of new trial as a response to "a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted").

For the reasons that follow, I do not believe that this is the kind of "exceptional case" in which a new trial is warranted on the basis that the evidence was so manifestly imbalanced that the jury plainly and grievously erred and convicted an innocent man. To the contrary, I believe the jury's determination of guilt was amply justified.

## II. Ferguson's Motive

The majority concludes that Ferguson's motive for participating in Power Rules' effort to murder Ayala was neither to maintain or advance his position in the Power Rules organization nor to achieve pecuniary gain. I disagree. The evidence shows that his motive must have been one or the other. The majority's narrow application of 18 U.S.C. § 1959's motive requirement is unjustified given the facts of the case and our repeated holding that "section 1959 is to be construed liberally in order to effectuate its remedial purposes." *United States v. Mapp,* 170 F.3d 328, 335

---

1. The standard I describe differs from that applicable to a Rule 29(c) motion for judgment of acquittal, because, on a Rule 29(c) motion, the district court must view the evidence in the light most favorable to the government. *See United States v. Guadagna,* 183 F.3d 122, 129 (2d Cir.1999). Consequently, a guilty verdict might survive a Rule 29(c) motion-because a rational jury, viewing the evidence through the government's eyes, could convict-but fail to meet the Rule 33 standard because the momentum of the evidence as a whole would make a guilty verdict irrational.

(2d Cir.1999) (citing *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir.1992)).

The majority finds first that Ferguson was not a member of Power Rules, and then, *a fortiori*, that he was not seeking to maintain or advance his position in the organization. However, there was considerable evidence of Ferguson's association with Power Rules, and much of that evidence also supports the conclusion that Ferguson was seeking to maintain or advance that association.

A person need not be a formal member of a criminal enterprise to come within the broad ambit of § 1959. Those organizations rarely, if ever, maintain tangible indicia of membership found in legitimate business organizations, such as membership rosters, membership cards, official titles, or personnel records. Membership in a criminal organization is far more elastic and informal, a fact reflected in § 1959's definition of a criminal enterprise as a "group of individuals associated in fact." 18 U.S.C. § 1959(b)(2). The majority's emphasis on "formal" membership in Power Rules ignores this definition and its insight about the structure of criminal organizations. *See ante* at 136.

The government adduced considerable evidence that Ferguson was "associated in fact" with Power Rules: Ferguson participated in three separate attempts to kill Ayala (including the attempted murder of Mercado, whom the assailants believed to be Ayala), whose elimination as leader of a rival gang was believed by Power Rules' leader, Guzman, to be critical to Power Rules' success. In each instance, Ferguson worked alongside others who were acknowledged members of Power Rules. The equipment he carried, guns and bullet-proof vests, was not his own; it was supplied by Guzman. Ferguson did not act on his own or direct others. He and the other Power Rules members with him

followed Guzman's directives. Finally, the jury heard testimony that Ferguson received a wad of cash from Guzman.

That there was no evidence linking Ferguson to Power Rules' day-to-day retail drug trade is beside the point. A criminal organization, like any other, may involve a refined division of labor such that some members perform functions that are not inherently a part of the organization's primary business. Specializing in violence rather than drug distribution does not preclude membership in an organization that, while deriving its revenues from drug sales, depends on both.

Membership in Power Rules is not enough, of course; Ferguson must also have been seeking to maintain or advance his position in the organization. We have held that the phrase " 'maintaining or increasing position' should be construed liberally." *United States v. Rahman*, 189 F.3d 88, 127 (2d Cir.1999) (citing *Concepcion*, 983 F.2d at 381). "Self-promotion need not have been the defendant's only, or even his primary, concern, if [the underlying offense] was committed 'as an integral aspect of membership' in the enterprise," *United States v. Thai*, 29 F.3d 785, 817 (2d Cir.1994) (quoting *Concepcion*, 983 F.2d at 381). This reading of § 1959 is informed by the statute's legislative history. *See Concepcion*, 983 F.2d at 381 (quoting S.Rep. No. 98–225, at 304, reprinted in 1984 U.S.C.C.A.N. at 3483).

The foregoing evidence also shows that Ferguson's participation in the mission to kill Ayala was undertaken with the purpose of maintaining or increasing his position in the organization. First, in working closely with other members of Power Rules in seeking out Ayala, Ferguson participated in "part of a premeditated plan to accomplish a shared objective." *United States v. Diaz*, 176 F.3d 52, 95 (2d Cir. 1999); *see also Rahman*, 189 F.3d at 127

(holding that defendant's crime was "in furtherance of" membership in the criminal organization in part because the crime was carried out with other members of the organization). Second, Ferguson's acting at Guzman's direction and using Guzman's equipment is also probative of a motive to maintain or increase his position within Power Rules. *See Mapp*, 170 F.3d at 336.

Third, the importance of the mission to the Power Rules organization suggests that Ferguson's standing within the enterprise would be secured by his success. Moreover, the elimination of Ayala as a competitor, with Ferguson leading the operation, would directly advance the interests of Power Rules by protecting its position in the local drug market and in turn would advance Ferguson as an associate-in-fact of the organization. *Cf. United States v. Tipton*, 90 F.3d 861, 891 (4th Cir.1996) (finding that defendant participated in killing in part to maintain position in a drug gang because he "acted ... as a member of the enterprise in furthering its policies of retaliatory violence against any who sufficiently antagonized any of its members"). Given our traditionally liberal reading of "maintain or increase" and the holdings in the analogous cases of *Rahman*, *Diaz*, *Mapp*, and *Tipton*, the evidence here easily justified the jury's verdict.

Notwithstanding the foregoing, the majority concludes that the weight of the evidence indicated that Ferguson was not attempting to maintain or enhance his association with Power Rules. Even if the majority were correct, the evidence surely was sufficient for the jury to find that Ferguson was retained by the organization as an outside "hit man" for monetary gain.

This pecuniary motive supports his conviction under 18 U.S.C. § 1959 even absent a finding of membership in Power Rules. Indeed, the majority concedes that "the weight of the evidence showed that Ferguson was *an outside hit man.*" *Ante* at 135 (emphasis added); *see also ante* at 135–36. If Ferguson was in fact an outside "hit man," one could fairly infer that he was paid for his work and thus that the motive for his participation was pecuniary. Yet the majority ultimately finds the evidence of this motive insufficient after concluding that the one observed cash payment from Guzman to Ferguson was too remote in time from the attempts to murder Ayala.

In so doing, the majority loses sight of the evidence as a whole and particularly the evidence it cited for the proposition that Ferguson was not a member of Power Rules. Either Ferguson was an outside "hit man" acting with a pecuniary motive of which the receipt of cash was evidence (if not of a quid pro quo payment, then that he was "in it for the money"), or, as I believe, he was an associate-in-fact of Power Rules and was seeking to advance or maintain his position in the organization, again driven by pecuniary gain. Any other theory is simply implausible. Absent membership or pecuniary motive, Ferguson must have participated in Ayala's intended murder, with all the risks that entails, solely out of friendship for Guzman. Similarly, if the money Guzman gave him was unrelated either to Ferguson's effort to kill Ayala or other enterprise activity, it must have been, in effect, a gift.[2] These possibilities border on the fanciful given the context: a large-scale, violent drug enterprise.

---

**2.** The majority hypothesizes that the payment could have been for "a criminal purpose unrelated to Ayala." *Ante* at 137. But unless that criminal purpose was also unrelated to

Power Rules, an improbable hypothesis without evidentiary support, the payment is evidence of membership in the gang.

Accordingly, I respectfully dissent from the majority's disposition of the government's appeal. I concur with the majority's disposition of Ferguson's cross-appeal.

