**UNITED STATES of America**

v.

**Eduardo RAMEREZ, Defendant.**

**No. 03 CR.834 SHS.**

United States District Court,
S.D. New York.

April 7, 2004.

Daniel R. Margolis, United States Attorney, New York, NY, for U.S.

Jonathan Marks, Jonathan Marks, P.C., New York, NY, for defendant.

## OPINION & ORDER

STEIN, District Judge.

Eduardo Ramerez was convicted by a jury on January 12, 2003 of money laundering in violation of 18 U.S.C. § 1956(a)(3)(B). He now moves pursuant to Fed.R.Cr.P. 29 to have that verdict set aside, or in the alternative, pursuant to Fed.R.Cr.P. 33 for a new trial.

## I. Background

The government charged Ramerez in a three count indictment with one count of conspiring to launder money and with two counts of participating in a financial transaction to launder money. The charges against Ramerez stem from his participation in a scheme to launder the proceeds of narcotics trafficking as follows: the cash proceeds of drug sales would be used to buy gold shot—or gold shot covered with silver—which in certain instances would be melted into the form of household items such as wrenches, belts and keys. Some of these were in turn painted to further disguise the fact that they were, quite literally, golden. The gold, or gold items, could then be more easily transported out of the United States without being detected by law enforcement.

At trial, the government introduced evidence that Ramerez worked as a watch repairman at Zarcos Jewelry, and that he and his employer, Fernando Obregon–Torres, assisted the government's confidential informant—Fabio Hernandez—to obtain gold in exchange for cash. Additionally, Ramerez and Obregon–Torres were connected to Alberto Quichiz, the owner of Alberto Jewelry, and assisted Hernandez in purchasing gold through Quichiz.

At trial, the government relied primarily upon the testimony of Hernandez and the recordings of his conversations with Ramerez and other conspirators. The government produced recordings of telephone conversations and recordings of meetings where Hernandez represented his cash to be the proceeds of narcotics trafficking in the presence of Ramerez and various other defendants. The government also introduced evidence of Ramerez's conversations with Hernandez about exchanging gold for cash. Hernandez testified that Ramerez had secured gold for him on more than one occasion. At the end of the trial, the jury

acquitted Ramerez of Count One—that he participated in a money laundering conspiracy from April 2001 through June 2003, and Count Two—that he participated in a money laundering transaction on February 5, 2002 by assisting Hernandez in obtaining gold for cash. The jury convicted Ramerez of Count Three, thereby finding that he participated in a money laundering transaction on May 21, 2003.

## II. Discussion

### A. *Rule 29 Motion to Set Aside the Verdict*

■■■ Defendant seeks a judgment of acquittal based on insufficiency of the evidence pursuant to Fed.R.Civ.P. 29. A district court will grant such a motion only if it concludes "that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *U.S. v. Jackson,* 335 F.3d 170, 180 (2d Cir.2003) (citing Fed.R.Crim.P. 29(a), (c); *United States v. Reyes,* 302 F.3d 48, 52 (2d Cir.2002)). A defendant who challenges the sufficiency of the evidence to support his conviction "bears a heavy burden." *Id.* (citing *United States v. Finley,* 245 F.3d 199, 202 (2d Cir.2001)). The district court must view all of the evidence in the light most favorable to the Government and "all permissible inferences [must be] drawn in the Government's favor." *Guadagna,* 183 F.3d 122, 129 (2d Cir.1999). If "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," then the jury's verdict must be upheld. *U.S. v. Jackson,* 335 F.3d at 180 (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

The jury convicted Eduardo Ramerez of Count Three of the indictment, violating 18 U.S.C. § 1956(a)(3)(B).[1] That count alleged that he participated in a money laundering transaction on May 21, 2003. The Court instructed the jury that in order to convict Ramerez on this count, they must find that Eduardo Ramerez's conduct satisfied the following three elements beyond a reasonable doubt:

"One, that Mr. Ramerez conducted a financial transaction which affects interstate or foreign commerce in any way;

Two, that the transaction involved property represented by a law enforcement officer or his agent to be, and believed by Mr. Ramerez to be, the proceeds of a specified unlawful activity; and

Three, that Mr. Ramerez acted with the intent to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity."

(Trial Tr. p. 608–609).

The jury was also instructed that pursuant to 18 U.S.C. § 2 Ramerez could be convicted on Count Three as an aider and abettor if the jurors found beyond a reasonable doubt that Ramerez "willfully and knowingly associated himself in some way with the crime and willfully and knowingly sought by some act to help make the crime succeed." (Trial Tr. p. 610:16–19). The Court also instructed the jury that the "presence of defendant where a crime is being committed, even coupled with knowledge that a crime is being committed or the mere acquiescence by a defendant in

---

1. That statute provides in pertinent part:
 Whoever, with the intent ... to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity ... conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both, 18 U.S.C. § 1956(a)(3)(B).

the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding and abetting. The aider and abettor must have some interest in the criminal venture." (Trial Tr. 610–611).

■ The evidence produced at trial was more than sufficient to support the jury's conclusion that Eduardo Ramerez engaged in a financial transaction in violation of 18 U.S.C. § 1956, or that he aided and abetted others in their violation of that statute.

The jury was entitled to consider evidence that Ramerez was present at conversations that took place in his hearing between the government's confidential informant, Hernandez, and Ramerez's employer, Obregon–Torres. A rational juror could conclude from those conversations, beyond a reasonable doubt, that Hernandez had represented the money to be the proceeds of illegal drug trafficking and that Ramerez believed that the money was the proceeds of illegal narcotics trafficking. For example, Hernandez said, in the presence of Ramerez on May 9, "my boss was receiving some cocaine here in the United States and so once he finished selling the cocaine he was going to give the money to me and we needed to buy gold to send it back to Colombia." (Trial Tr. 246); (Government Exhibit ("GX") 117 at 19).

A rational juror could also conclude from Ramerez's conversations with Hernandez on May 21, 2003 that Ramerez intended to assist, or did assist, Hernandez in completing a transaction to disguise the origins of the money. In a recorded telephone conversation, played for the jury, Hernandez said to Ramerez, "So I told him [Alberto Quichiz] that you recommended me and all so that ... I'll send you a small commission with him now." Ramerez responded, "Oh, right. Nice. Nice." (GX 183T at 3). Ramerez's response here is sufficient to support an inference that he was agreeing that he had facilitated Hernandez's acqui-

sition of gold from Quichiz and that he would accept the tip.

While the testimony could also be construed to support the conclusion urged by defendant—that Ramerez was only indicating his agreement to· accept a tip—in light of the other evidence presented at trial, a rational juror was able to conclude beyond a reasonable doubt that Ramerez intended to facilitate Hernandez's transaction, and knowingly did so.. For example, the jury heard a second conversation recorded on May 21, 2003 where Ramerez offered to meet Hernandez after Obregon–Torres returned to the store. The jury was entitled to infer from this evidence that Ramerez intended to assist Obregon–Torres, and did ·in fact do so. Moreover, the jurors heard evidence showing that Obregon–Torres and Ramerez had first established the connection between Hernandez and Quichiz, and also evidence that Hernandez first approached ·Obregon–Torres and Ramerez when seeking to buy gold. Even if the jury did not believe that Ramerez took any specific action to cause the transaction between Hernandez and Quichiz to take place on May 21, 2003, the jury was entitled to conclude that Ramerez's assistance in introducing those men on a prior occasion was an act that aided the financial transaction.

Finally, the evidence enabled a rational juror to conclude that the money laundering transaction affected interstate or foreign commerce, given the testimony that the gold was to be exported. A rational juror could thus find that Ramerez was guilty beyond a reasonable doubt of each element of the crime charged, and therefore defendant's motion for a judgment of acquittal pursuant to Fed.R.Civ.P. 29 is denied.

B. *Rule 33 Motion for a New Trial*

■ Fed.R.Cr.P. 33 provides that a court may grant a defendant's request for

a new trial "if the interests of justice so require." A court must exercise its authority to grant a new trial " 'sparingly' and only in 'the most extraordinary circumstances.' " *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir.2001) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir.1992)). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be manifest injustice." *Id.* at 134 (citing *Sanchez*, 969 F.2d at 1414).

 As set forth above, the government presented evidence at trial sufficient to permit a rational jury to conclude beyond a reasonable doubt that Ramerez committed the crime charged in Count Three of the indictment, and the jury in fact so found. "Because the courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility", "[i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." *Sanchez*, 969 F.2d at 1414. "An example of exceptional circumstances is where testimony is 'patently incredible or defies physical realities,' although the district court's rejection of trial testimony by itself does not automatically permit Rule 33 relief." *U.S. v. Ferguson*, 246 F.3d 129, 133–134 (2d Cir.2001) (quoting *Sanchez*, 969 F.2d at 1414). No such exceptional circumstances were present in this case, and there is no true concern in this case that "an innocent person may have been convicted" in light of the totality of the circumstances, and the evidence presented. The Court is satisfied that "competent, satisfactory and sufficient evidence" in the record supports the jury verdict, *Sanchez*, 969 F.2d at 1414, and therefore defendant's motion for a new trial pursuant to Fed.R.Cr.P. 33 is denied.

### III. Conclusion

Because the government introduced sufficient evidence at trial to allow a rational finder of fact to conclude beyond a reasonable doubt that Ramerez was guilty of the conduct charged in Count Three of the indictment, defendant's motion for a verdict of acquittal or for a new trial is denied.