17-2965 (L)
United States v. Roye

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION
TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS
GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S
LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH
THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN
ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY
CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT
REPRESENTED BY COUNSEL.

        At a stated term of the United States Court of Appeals for the Second Circuit,
held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City
of New York, on the 16th of January, two thousand nineteen.

PRESENT:
                DENNIS JACOBS,
                GUIDO CALABRESI,
                        Circuit Judges,
                JED S. RAKOFF,*
                        District Judge.
_____

UNITED STATES OF AMERICA,

        Appellant-Cross-Appellee,

        -v.-                                                17-2965 (L),
                                                           17-4057 (XAP)

JIMEL FRANK, AKA 30, AKA VELLY,

        Defendant,

_____

* Judge Jed S. Rakoff, United States District Court for the Southern District of New
York, sitting by designation.

**KARL ROYE, AKA EAGLE,**

**Defendant-Appellee-Cross-Appellant.**

**FOR APPELLANT-CROSS-APPELLEE:**

Sandra S. Glover, Assistant United States Attorney, for John H. Durham, United States Attorney for the District of Connecticut, New Haven, CT.

**FOR DEFENDANT-APPELLEE-CROSS-APPELLANT:**

Christopher Duby, Law Office of Christopher Duby LLC, Hamden, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Arterton, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART AND REVERSED IN PART**.

Karl Roye was convicted after a five-day jury trial of murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) & (2), and conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5). Roye and Jimel Frank, a co-member of the Wall Street gang in Hartford, murdered Anthony Parker, a member of a rival gang. The United States District Court for the District of Connecticut (Arterton, J.) granted Roye's post-trial motion for judgment of acquittal on the conspiracy count. The Government appeals that decision. Roye cross-appeals from the judgment of conviction entered against him on the murder count, arguing: (1) there was insufficient evidence to support his murder conviction; (2) the admission of allegedly perjured testimony deprived him of the right to a fair trial; and (3) the district court improperly admitted evidence obtained in a search executed prior to his

indictment in this case.   We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Roye and Frank suspected Parker of breaking into and robbing a car parked at Roye's house (a Wall Street drug distribution site), and of brandishing a gun at the mother of a Wall Street member.   Roye and Frank agreed that the necessary retaliation was to "take care of" Parker.   JA 1002.   Their acquaintance, Anthony Owens, was buying a car from Parker, so Frank and Roye knew where Parker would be and when he would be vulnerable to ambush. Roye brought two guns and gloves.   When Owens advised of Parker's location and that he was sitting alone in the car, Frank and Roye pulled into the driveway, blocking Parker's vehicle.   Frank and Roye--each holding a gun--walked around the car on opposite sides.   After a short confrontation, Frank and Roye both shot Parker, and fled.

Roye's post-trial motion for a judgment of acquittal argued there was insufficient evidence to support the convictions.   The district court denied the motion on the substantive murder count and granted it on the conspiracy count. The court also denied a motion for a new trial.   The court entered judgment against Roye on the murder count and sentenced him to life imprisonment. These cross-appeals followed.

**1.** The Government argues that sufficient evidence supported the conspiracy verdict.

On a motion for a judgment of acquittal, the criminal conviction must be upheld if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[W]e review all of the evidence presented at trial in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government."   United States v. Walker, 191 F.3d 326, 333 (2d Cir. 1999) (internal quotation marks omitted).   "A judgment of acquittal can be entered only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt."   United States v. Cuti, 720 F.3d 453, 461 (2d Cir. 2013)

3

(internal quotation marks omitted).   We review a sufficiency challenge <u>de novo</u>.  <u>See, e.g.</u>, <u>United States v. Sabhnani</u>, 599 F.3d 215, 241 (2d Cir. 2010).

The district court concluded that the evidence was sufficient to support only a finding that Roye and Frank agreed to rob Parker--and that the murder was a robbery gone bad.   The Government cites to Frank's testimony as to his discussion with Roye regarding the appropriate response to Parker's threat:

> [Prosecutor]:   [T]ell the jury what the discussion was involving you, Kendall Brown, and Karl Roye, what did you--what was the discussion; what did you say, what was decided?
>
> [Frank]:   Oh, that this dude is tripping, and we need to see him for that.
>
> [Prosecutor]:   I'm sorry, you had to what?
>
> [Frank]:   We had to--we had to take care of him, pretty much.
>
> [Prosecutor]:   You had to take care of [Parker]?
>
> [Frank]: Yeah, we was going to attempt to rob him as well, since that's what he was trying to do.

JA 1002.   The Government also points to Frank's testimony that he told Owens on the day of the murder that he was going to shoot up the car that Parker was in.   Roye was not present for this conversation.

The Government also argues that the actions of Roye and Frank on the day of the murder support an inference that they agreed to murder Parker, including: Roye supplied guns and gloves for the ambush; Frank placed a call to Owens, telling him to get out of the car Parker was driving (evidently for Owens' safety); Frank and Roye blocked Parker's car in the driveway and approached from either side of the car; Frank and Roye shot Parker in quick succession after a very short verbal confrontation; and Frank and Roye fled the scene after the murder without attempting to rob Parker.   The Government emphasizes the fact that

4

Frank approached the car from the far side of a fence; a position inconvenient for a robbery, but good for a murder.

We agree with the Government that this evidence is sufficient to support a finding that Roye conspired with Frank to murder Parker.   Roye contends that this evidence could also support a reasonable inference that Frank and Roye agreed only to rob Parker.   But where there are competing reasonable inferences, we must credit the jury.   See Cuti, 720 F.3d at 462 ("[T]he task of choosing among competing, permissible inferences is for the [jury], not for the reviewing court.").   The evidence supporting the conspiracy to murder was not so "meager" as to justify overturning the jury's verdict.   Id. at 461.

Accordingly, we reverse the judgment of acquittal on the conspiracy count and remand the case to the district court with direction to reinstate the jury verdict, proceed to sentencing, and enter a judgment of conviction.

**2.** Roye challenges the sufficiency of the evidence supporting his conviction for murder in aid of racketeering.   Specifically, Roye argues that the Government's evidence does not support a finding that he murdered Frank to increase or maintain his position in a racketeering enterprise (namely, Wall Street).   See, e.g., United States v. Ferguson, 246 F.3d 129, 136 (2d Cir. 2001) ("[F]or criminal liability under [18 U.S.C. § 1959] to attach, there must be evidence that [the defendant] acted with the expectation of gaining membership, or in furtherance of an intimate involvement with the enterprise." (citations omitted)).

The jury heard evidence that: Roye was a member of Wall Street; it was a fiercely territorial gang that sold narcotics in a defined Hartford neighborhood; Frank and Roye considered Parker a threat to Wall Street; they suspected Parker of breaking into and robbing narcotics from a car parked at Roye's home and brandishing a gun at the mother of a Wall Street member; and Frank and Roye discussed "tak[ing] care of" Parker in retaliation for those incidents.   JA 1002. Such evidence is sufficient to establish that Roye murdered Parker in furtherance of his membership in Wall Street.   See United States v. Diaz, 176 F.3d 52, 95 (2d Cir. 1999) (concluding that the motive element was met where the defendants

furthered their gang membership by killing individuals they deemed threats to the narcotics organization); Ferguson, 246 F.3d at 135 (noting that the element is met where the Government demonstrates that "a defendant . . . is an established member of a criminal enterprise [and] acts in a way consistent with that membership").

**3.** Roye moves for a new trial on the ground that the Government knowingly offered the perjured testimony of Anthony Owens.

At trial, Owens testified that Parker came to Owens' house to finalize the sale of a car to Owens, and, when Parker and Owens were driving to another house in the neighborhood, Frank called Owens to tell him to get out of the car because he and Roye were coming to ambush Parker. Roye cites an inconsistency to demonstrate that Owens committed perjury at his trial: Owens testified that he received Frank's call after he got out of the car and was relieving himself in the backyard, whereas at his plea colloquy several days earlier, Owens had testified that he was still in the car with Parker when he received Frank's call.

"[M]otions for a new trial based on the identification of perjured testimony should be granted only with great caution and in the most extraordinary circumstances." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992). "[T]he defendant must show that (i) the witness actually committed perjury; (ii) the alleged perjury was material; (iii) the government knew or should have known of the perjury at [the] time of trial; and (iv) the perjured testimony remained undisclosed during trial." United States v. Cromitie, 727 F.3d 194, 221 (2d Cir. 2013) (internal quotation marks omitted). "The perjury is 'material' if there is 'any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" Id. at 221-22.

Roye failed to demonstrate that the alleged perjury was material or that it remained undisclosed during trial. The inconsistency in Owens' testimony was fully explored before the jury. Defense counsel questioned Owens about the inconsistency; and, when Owens doubled-down on his assertion that he had left the car when he received the call, defense counsel read Owens his prior inconsistent statement from the plea colloquy. JA 847-49. Given this airing of

6

the issue, there is no reasonable likelihood that the false testimony affected the judgment of the jury.   See Cromitie, 727 F.3d at 222-23.

Moreover, Roye has failed to present any evidence demonstrating that Owens committed perjury at his trial--the perjury could just as well have been committed at Owens' plea colloquy.   See United States v. Bortnovsky, 879 F.2d 30, 33 (2d Cir. 1989) ("[T]he difference alone would not constitute perjury.").

**4.** Finally, Roye challenges the district court's admission into evidence of testimony from a law enforcement agent that guns and ammunition were found during a search of Roye's home 18 months before Parker's murder.

"We review a district court's evidentiary rulings deferentially, mindful of its superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice."   United States v. Abu-Jihaad, 630 F.3d 102, 131 (2d Cir. 2010).   "We will reverse an evidentiary ruling only for abuse of discretion, which we will identify only if the ruling was arbitrary and irrational."   Id. (internal quotation marks and citations omitted).

The district court reasonably concluded that the discovery of guns and ammunition in Roye's home 18 months earlier was relevant to Roye's involvement in a racketeering enterprise, a required element of proof for both counts in the indictment. See United States v. Mejia, 545 F.3d 179, 206 (2d Cir. 2008).   Moreover, the court minimized the risk of prejudice by instructing the jury that the evidence should be considered only for the purpose of proving the existence of the racketeering enterprise and not as evidence of Roye's involvement in Parker's murder.

We have considered the parties' remaining arguments and find them to be without merit.   For the foregoing reasons, we **AFFIRM IN PART AND REVERSE IN PART** the judgment of the district court.   We remand the case to the district court with directions that it reinstate the jury verdict on the conspiracy count, proceed to sentencing, and enter a judgment of conviction.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court