**UNITED STATES of America**

v.

**Timothy M. McGINN and David L. Smith, Defendants.**

**No. 1:12–CR–28.**

United States District Court, N.D. New York.

April 26, 2013.

---

Richard S. Hartunian, United States Attorney for the Northern District of New York, of counsel Elizabeth C. Coombe, Esq., Richard D. Belliss, Esq., Wayne A. Myers, Esq., Ass't United States Attorneys, Albany, NY.

E. Stewart Jones Law Firm, PLLC, of counsel E. Stewart Jones, Jr., Esq., Troy, NY, for Defendant Timothy M. McGinn.

Dreyer Boyajian LLP, of counsel William J. Dreyer, Esq., Lauren Owens, Esq., Albany, NY, for Defendant David L. Smith.

### MEMORANDUM–DECISION and ORDER

DAVID N. HURD, District Judge.

## I. INTRODUCTION

On October 11, 2012, a thirty-two count superseding indictment was filed in the Northern District of New York charging defendants Timothy M. McGinn ("McGinn") and David L. Smith ("Smith") (collectively "defendants") each with twenty-nine federal crimes. Counts 1 through 26 charged both defendants with conspiracy to commit mail and wire fraud (Count 1), mail fraud (Counts 2–10), wire fraud (Counts 11–20), and securities fraud (Counts 21–26). Counts 27 through 29 charged McGinn with filing false tax returns, and Counts 30 through 32 similarly charged Smith with filing false tax returns.

A four-week jury trial was conducted from January 7 through February 1, 2013, in Utica, New York. At the close of the government's proof, both defendants moved for a judgment of acquittal on all counts pursuant to Federal Rule of Crimi-

nal Procedure 29(a). Both motions were denied in their entirety. Thereafter, defendants presented four joint witnesses. McGinn then testified and subsequently rested his case. Likewise, Smith then testified and rested. After both defendants rested, they each renewed their Rule 29 motions. Both motions were again denied. The government then called one rebuttal witness. At the close of all evidence, defendants renewed their Rule 29 motions and moved for a mistrial based on the rebuttal witness testimony. All motions were denied.

After approximately twenty-three hours of deliberations spread over four days, the jury returned a mixed verdict. Both defendants were found guilty of conspiracy to commit mail and wire fraud (Count 1). McGinn was found guilty on seven counts of mail fraud (Counts 4–10), all ten counts of wire fraud (Counts 11–20), all six counts of securities fraud (Counts 21–26), and all three counts of filing a false tax return (Counts 27–29). Smith was found guilty on three counts of mail fraud (Counts 8–10), two counts of wire fraud (Counts 14 and 17), all six counts of securities fraud (Counts 21–26), and all three counts of filing a false tax return (Counts 30–32).

Separate judgments of acquittal were entered as to McGinn (on Counts 2 and 3) and Smith (on Counts 2–7, 11–13, 15, 16, and 18–20). Defendants have each filed a motion for a judgment of acquittal pursuant to Rule 29(c) with regard to all counts on which they were convicted. In the alternative, defendants seek a new trial pursuant to Rule 33. The government responded in opposition, and defendant replied. Oral argument was heard on April 10, 2013, in Utica, New York. Decision was reserved.

The parties' familiarity with the underlying facts established at trial is assumed.

Pertinent facts will be repeated below as necessary.

## II. DISCUSSION

### A. Rule 29(c) Motions for Judgment of Acquittal

When considering a Rule 29 motion, a jury verdict must be upheld if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Cote,* 544 F.3d 88, 98 (2d Cir.2008). The evidence must be viewed in the light most favorable to the government, with all reasonable inferences drawn in its favor. *Id.* The evidence must be considered in its totality, "and the government need not negate every possible theory of innocence." *Id.*

Moreover, deference must be given "to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony." *United States v. Glenn,* 312 F.3d 58, 64 (2d Cir.2002) (internal quotation marks omitted). Direct evidence of guilt is not required; circumstantial evidence is sufficient "so long as guilt is established beyond a reasonable doubt." *Id.* However, if there is insufficient evidence in the record "to support a conclusion that, beyond a reasonable doubt, the defendant committed the crime charged," the jury verdict must be overturned. *Id.*

#### 1. Conspiracy—Count 1

Defendants were both found guilty of conspiracy to commit mail and wire fraud. They argue that these convictions cannot stand because there was insufficient evidence that they agreed to commit fraud.

When viewed in the light most favorable to the government, there was sufficient circumstantial evidence for a rational jury to conclude that the defendants knowingly and willingly entered into a conspira-

cy in which they agreed to cooperate with each other to defraud investors and FINRA.[1] The jury was free to credit the government's theory of the case and infer from the testimony and exhibits that the defendants worked together to divert funds to themselves without disclosing such transactions to the investors and attempted to cover up such practices by submitting false documents to FINRA.

Accordingly, defendants' convictions on Count 1 will not be disturbed.

### 2. *Mail and Wire Fraud—Counts 4–20*

Defendants' arguments related to the mail and wire fraud convictions fall into four general categories: (1) McGinn had no knowledge of the post-bankruptcy sales of Firstline investments (Counts 4–6, 11–13); (2) the transfers of money from the escrow accounts of the Integrated Excellence and TDMM Cable Jr. Trusts were permissible because the trust accounts had "broken escrow" and owed fees to MSTF (Counts 7, 14–18, 20); (3) the payments made from MSTF to non-MSTF investors were disclosed in the PPMs for the Four Funds (Counts 8 and 9) or were legitimate loans to McGinn (Count 19); and (4) there was nothing misleading about the September 10, 2009, letter and memo regarding the Firstline situation (Count 10).

■ *First,* McGinn acknowledged on cross-examination that he was immediately informed of Firstline's bankruptcy filing. Subsequently, McGinn received emails from Andrew Guzzetti that indicated Firstline investments were available for sale to investors post-bankruptcy. McGinn claims he did not read the content of these emails

regarding the Firstline sales. However, the jury was free to discredit this assertion and infer that McGinn was aware Firstline investments continued to be sold to investors despite the bankruptcy, yet he did nothing to stop it. Indeed, evidence showed that McGinn replied to some of these emails, suggesting he read their content.

Further supporting these convictions are the three Firstline subscription agreements dated after Firstline filed for bankruptcy and signed by McGinn as well as the testimony of Philip Rabinovich, who reported that McGinn personally approved a post-bankruptcy sale. Therefore, there was sufficient evidence to support McGinn's convictions on Counts 4–6, and 11–13.

■ *Second,* defendants' assertion that once escrow was "broken" they could essentially do as they pleased with the investor money is unpersuasive. In the PPMs, defendants did not disclose to investors that the investment funds would be diverted to defendants' personal bank accounts or be used to prop up other trusts. Further, there was witness testimony that such information would have been material to an investor's decision whether to invest in the trusts. Thus, there was sufficient evidence to support defendants' convictions on Counts 7, 14–18, and 20.

*Third,* the payments made from MSTF to non-MSTF investors and McGinn personally were, again, not disclosed to investors in the PPMs. The jury rejected defendants' assertion that these payments were actually valid fees owed by the Four Funds and authorized by the PPMs. The

---

1. As explained below, a question arose during jury deliberations as to whether the government had to prove defendants intended to mislead investors *and* FINRA or just one of these entities to convict them on Count 1. This distinction is irrelevant as there was sufficient circumstantial evidence that defendants intended to mislead investors by failing to disclose material information and FINRA by submitting falsified documents.

jury similarly did not believe that the payment to McGinn was a valid loan, which he partially repaid. Instead, the jury concluded that defendants made these transactions to improperly direct funds to preferred clients and McGinn. Defendants' attempt to explain away these transactions as mere accounting errors is unavailing and was also rejected by the jury. The jury was permitted to discredit defendants' subsequent alleged accounting correction and instead infer that they attempted to cover up the true nature of these transactions.

*Fourth,* defendants maintain that the letter and memo sent to investors regarding the Firstline situation accurately portrayed the information they had at the time. However, as the government correctly points out, the September 10, 2009, memo falsely indicates that Firstline had withheld critical information about the ADT litigation. This is in direct conflict with the testimony of Firstline executives. Firstline CEO, Stephen Baker, testified that he told McGinn about Firstline's financial problems and alerted him to the ADT situation in the fall of 2007. Similarly, Firstline's CFO, John Atkinson, and founder, Trevor Keyes, testified that they fully disclosed the nature of the ADT situation to McGinn. The memo also concealed the source of the funding for continued investor payments. There was thus sufficient evidence for the jury to find that the September 10, 2009, letter and memo misled Firstline investors and amounted to mail fraud.

In short, viewing the evidence in the light most favorable to the government and making all reasonable inferences in its favor, there was sufficient evidence to support the jury's verdict on the mail and wire fraud counts (Counts 4–20).

### 3. *Securities Fraud—Counts 21–26*

■ Defendants assert that the securities fraud convictions must be overturned because there was insufficient evidence to establish that they failed to make all legally required disclosures. However, there was sufficient evidence to support the jury's conclusion that defendants failed to disclose in the PPMs that investor money would be used to make payments to the personal bank accounts of both defendants and Matthew Rogers. Further, there was witness testimony that such information would have been material to an investor's decision whether to invest in the trusts. The jury was free to conclude that by diverting large sums of money related to the purchase or sale of the trusts to their personal bank accounts, without disclosing such transfers to investors, defendants engaged in securities fraud.

Accordingly, the convictions on the securities fraud charges (Counts 21–26) will not be disturbed.

### 4. *Filing False Tax Returns—Counts 27–32*

■ Finally, defendants argue that there was insufficient evidence for the jury to conclude that the funds they personally received were reportable fees, not loans. Again, viewed in the light most favorable to the government, there was sufficient evidence to support these convictions. Smith himself characterized the payments as "fees" when initially asked about them by FINRA, McGinn did not disclose the payments as pending loans on his mortgage application, and defendants did not list the purported loans as liabilities on their financial statements.

Moreover, Matthew Rogers testified that when he received similar payments he did not intend to repay them as loans and was only asked to sign promissory notes after FINRA initiated an investigation.

Although promissory notes are not required to establish that the payments were loans, the jury was permitted to consider the absence of promissory notes as an indication that the payments were instead fees.

Viewed in its totality, this evidence was sufficient for the jury to infer that neither defendant intended to repay the supposed "loans" when he received the funds. The jury reasonably concluded that these funds were instead fees that should have legally been reported as income on defendants' tax returns in 2006, 2007, and 2008.

Accordingly, defendants' motions for a judgment of acquittal will both be denied in their entirety.

### B. *Rule 33(a) Motions for a New Trial*

■ There is broader discretion to grant a new trial pursuant to Rule 33 than to enter a judgment of acquittal under Rule 29. *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir.2001). A new trial may be ordered "to avert a perceived miscarriage of justice." *Id.* at 133 (internal quotation marks omitted). Only "exceptional circumstances" warrant granting a new trial. *Id.* Deference must be given to the jury's credibility assessments unless manifest injustice would result from allowing the jury's verdict to stand. *Id.* at 133–34.

Defendants' primary argument in favor of a new trial is that the answer provided to the jury in response to the first jury note was improper. Regarding the use of the word "and" in the conspiracy allegations of Count 1, the jury inquired: "Does it have to be *both* investors and FINRA for all elements of this count"? Jury Note, ECF No. 99. Essentially, the jury wanted to know if, in order to convict on Count 1, the government had to prove beyond a reasonable doubt that defendants intended to mislead the investors and FINRA, or if misleading either would suffice. After consulting with counsel, the jury note was answered in the negative—meaning the jury should convict if it found, beyond a reasonable doubt, that defendants intended to mislead either the investors or FINRA. Defendants maintain that this was improper and that the jury note should have been answered in the affirmative, as they had requested, in light of the language used in the superseding indictment.

Defendants are correct that the superseding indictment charged them with conspiring to commit mail and wire fraud "to mislead investors and FINRA." Superseding Indictment ¶ 67. However, misleading investors and misleading FINRA are two separate objectives of the alleged conspiracy. The jury was properly instructed that the government need only prove an overt act was "committed to further some objective of the conspiracy" and that "the alleged objectives of the conspiracy ... were to mislead investors and FINRA." Final Jury Charge, 28.

■ Although the government charged defendants with conspiring to mislead the investors *and* FINRA, the jury could properly convict if it found, beyond a reasonable doubt, that an overt act was taken to further *either* objective. *See United States v. Berger*, 224 F.3d 107, 113 (2d Cir.2000) ("The district court was correct as a matter of law to charge that the government needed only to prove agreement on one of the objectives charged in the indictment in order to establish that a conspiracy existed."); *United States v. Bilzerian*, 926 F.2d 1285, 1302 (2d Cir.1991) ("A conspiracy conviction based on a multiobject conspiracy may be upheld so long as evidence is sufficient with respect to at least one of the criminal objectives."). Therefore, there was no error in the jury instruction or the answer to the first jury

note. Moreover, as noted above, there was sufficient circumstantial evidence for the jury to convict defendants of conspiring to further both objects of the overall conspiracy—rendering this distinction irrelevant.

McGinn's remaining arguments—related to the direct examination of Richard Engel, the testimony of the government's rebuttal witness, and the introduction and use of Smith's 1999 letter to McGinn and Smith's letter to Jay Kaplowitz—are unpersuasive for the same reasons detailed throughout the trial. In short, there are no exceptional circumstances to justify the grant of a new trial.

## III. *CONCLUSION*

Viewing the totality of the evidence in the light most favorable to the government, drawing all reasonable inferences in the government's favor, and affording deference to the jury's assessment of witness credibility and its resolution of conflicting testimony, there was sufficient evidence for a rational trier of fact to conclude that the government established, beyond a reasonable doubt, all essential elements of the crimes for which defendants were convicted. Further, there is no miscarriage of justice that needs to be averted nor exceptional circumstances to justify a new trial.

Therefore, it is

ORDERED that

1. Defendant Timothy M. McGinn's motion for a judgment of acquittal or, in the alternative, for a new trial is DENIED; and

2. Defendant David L. Smith's motion for a judgment of acquittal or, in the alternative, for a new trial is DENIED.

IT IS SO ORDERED.