UNITED STATES of America,

v.

**Bonnie MEISLIN, Defendant.**

**No. 5:14–CR–18.**

United States District Court, N.D. New York.

Signed June 11, 2015.

Edward R. Broton, Esq., Ass't United States Attorney, Richard S. Hartunian, Syracuse, NY, for Northern District of New York.

Kimberly M. Zimmer, Esq., Zimmer Law Office PLLC, Brittany E. Aungier, Esq., Barclay Damon LLP, Syracuse, NY, for Defendant.

### MEMORANDUM–DECISION and ORDER

DAVID N. HURD, District Judge.

## I. INTRODUCTION

On February 25, 2015, a jury found defendant Bonnie Meislin ("Meislin" or "defendant") guilty of twenty-three counts of health care fraud in violation of 18 U.S.C. § 1347 and one count of conspiracy to make false statements in connection with health care billing in violation of 18 U.S.C. §§ 371, 1035.

Meislin has moved pursuant to Federal Rule of Criminal Procedure ("Rule") 33 for a new trial, contending that the admission of certain evidence was improper and that the jury should not have been instructed as to an aiding and abetting theory. Alternatively, defendant seeks a judgment of acquittal on all counts pursuant to Rule 29, arguing the evidence adduced by the United States of America (the "Government") was insufficient to support findings of guilt. The motions were fully briefed and oral argument was heard in Utica, New York, on May 1, 2015. Decision was reserved.

## II. DISCUSSION [1]

### A. Motion for a New Trial

A trial court may "vacate any judgment and grant a new trial if the interest of justice so requires." *United States v. Botti*, 722 F.Supp.2d 207, 209 (D.Conn.2010) (quoting FED. R. CRIM. P. 33(a)). "Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority sparingly and in the most extraordinary circumstances." *Id.* (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001)).

When exercising the discretion contemplated by Rule 33, "[t]he trial court must be satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict." *Ferguson*, 246 F.3d at 134. To that end, "the court is

---

1. The parties' familiarity with the underlying facts established at trial is assumed.

entitled to weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *Botti*, 722 F.Supp.2d at 209 (quoting *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir.1992)).

■ However, "it is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment, and the test is whether it would be a manifest injustice to let the guilty verdict stand." *Botti*, 722 F.Supp.2d at 209 (quoting *Sanchez*, 969 F.2d at 1414). Accordingly, in determining whether to grant a new trial, the court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." *United States v. Shellef*, 732 F.Supp.2d 42, 49–50 (E.D.N.Y.2010) (quoting *Ferguson*, 246 F.3d at 133–34).

### 1. *404(b) Evidence*

■ Meislin, renewing an argument made and rejected *in limine,* argues the Government should not have been permitted to introduce the testimony of Erica Stell, who testified that defendant made certain statements to her during a ten-day period in July and August 2006 while the two were co-workers at Fadi Bejjani's medical practice, a different pain management clinic for which defendant had performed billing services prior to her employment with Upstate Pain Management.

In particular, Ms. Stell testified that Meislin told her that she would frequently submit bills to medical insurance companies which indicated Dr. Bejjani had been present for certain procedures when, in fact, he had not. *See generally* Consolidated Trial Transcript, ECF No. 94, 616–18 ("Trial Transcript").[2] Ms. Stell's testimony tended to establish that: (1) defendant would "routinely double bill[ ] medical insurance companies"; (2) "there were

times that [defendant] would bill for procedures that Doctor Bejjani was not present for"; (3) defendant often complied with Dr. Bejjani's instructions to "co-bill for procedures that he wasn't present for, [or] that another doctor had led with"; and (4) defendant "would bill for those procedures even though he was not present." *Id.* Ms. Stell further testified that:

A. I said this is wrong. You shouldn't be doing these things. She said, I know it is wrong, but I can't make this kind of money anywhere else. She also .... told me that she was the only one who was allowed to receive the mail and open the mail. She held it very close and would tell me that if a certain amount of money came in from these procedures, she would get bonuses from Doctor Bejjani.

. . . .

A. We had several conversations about the double billing, why she was doing it, and how she could get out of it. I said to her on one occasion, get another job. You don't have to be doing these things. She said the money is too good. You don't understand.

Trial Transcript at 617–18 (paragraph breaks omitted).

After a limiting instruction was given to the jury, the Government was permitted to introduce this testimonial evidence pursuant to Federal Rule of Evidence 404(b), which governs the admissibility of evidence of a defendant's prior or subsequent "crime[s], wrong[s], or other act[s]" not charged in an indictment. FED.R.EVID. 404(b).

Although this type of evidence "is not admissible to prove a person's character in order to show that on a particular occasion

---

**2.** Pagination corresponds to that assigned by CM/ECF.

the person acted in accordance with the character," FED.R.EVID. 404(b)(1), evidence of relevant "other acts" may nevertheless be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identify, absence of mistake, or lack of accident." FED.R.EVID. 404(b)(2).

In determining whether such "other act" evidence may be properly admitted, a trial court must consider whether the evidence is: (1) being offered for a proper purpose; (2) relevant to a material issue in dispute; and (3) substantially more probative than prejudicial.[3] *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012); *see also Huddleston v. United States*, 485 U.S. 681, 691–92, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

### i. *Purpose*

Meislin argues the Government cannot identify any so-called proper purpose for the admission of Ms. Stell's testimony, which she claims does little more than demonstrate her alleged propensity to commit the unlawful acts charged in the indictment. The Government responds by noting that, during the course of the trial, defendant consistently and repeatedly denied that she possessed the requisite knowledge and intent to be criminally liable for health care fraud and argues that Ms. Stell's testimony, which tended to show defendant was aware that it was improper to bill in a way that falsely represented a doctor had been present during medical procedures, was probative on these issues.

The Second Circuit follows an "inclusionary" approach to Rule 404(b), which holds that "other acts" evidence is generally admissible "for any purpose other than

to demonstrate criminal propensity." *Scott*, 677 F.3d at 79 (citing *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir.2004) (per curiam)). Accordingly, a trial court "may admit evidence that serves any 'non-propensity purpose,' including state of mind." *United States v. Curley*, 639 F.3d 50, 57 (2d Cir.2011) (citing *United States v. Edwards*, 342 F.3d 168, 176, 180 (2d Cir. 2003)).

For its part, the Government is correct—Meislin cannot seriously dispute the fact that her knowledge and intent, both permissible purposes for which Rule 404(b) evidence may be admitted, were placed in issue at the very outset of trial and remained one of the primary focuses of the proof. *See, e.g.*, Trial Transcript at 28 ("They have to show you much more than some services were billed incorrectly . . . . and prove to you much more than a misunderstanding or a failure to be aware of a regulation . . . . [rather], [t]hey must show you she broke the law, and that she intended to break the law."); *id.* ("She didn't have the knowledge that they claimed she has."); *id.* at 37 ("The Government has to prove beyond a reasonable doubt that [defendant] submitted specific bills for payment to Medicare and that when she did, she knew the bills were false and fraudulent. The Government cannot prove that because it didn't happen."); *id.* at 708 ("[The Government] had to show you that . . . whoever did those things, that it was intentionally and deliberately false and fraudulent."). Accordingly, the Government offered Ms. Stell's testimony for a proper purpose.

### ii. *Relevance*

Rather, Meislin's challenge is more properly cast as a dispute over the

---

3. The trial court must also give an appropriate limiting instruction if one is requested by the defendant. *Scott*, 677 F.3d at 79. Meislin was offered, accepted, and received the benefit of such a limiting instruction prior to the introduction of Ms. Stell's testimony; the jury received a second limiting instruction in the final charge. Trial Transcript at 615–16; 755–56.

relevancy of the Government's proffered Rule 404(b) evidence. "To satisfy the relevance inquiry, the evidence must be 'sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the [state of mind] inference advocated by the proponent of the evidence.'" *Curley,* 639 F.3d at 57 (quoting *United States v. Peterson,* 808 F.2d 969, 974 (2d Cir.1987)).

However, "simply because the defense has put [certain] matters in issue does not open the door for the government and give it *carte blanche* to introduce any prior act of defendant that falls into the same crime category." *United States v. Edwards,* 342 F.3d 168, 177 (2d Cir.2003). "Rather, some similarity or tangible connection between the acts must be identified, something that makes the prior act relevant to proving the contested fact." *Id.* In other words, the evidence must be "sufficiently similar" to the charged conduct; likewise, "the chain of inferences necessary to connect [the] evidence with the ultimate fact to be proved" must not be ·"unduly long." *Curley,* 639 F.3d at 57 (quoting *Peterson,* 808 F.2d at 974).

Meislin attempts to dispute the relevancy of Ms. Stell's testimony by arguing the conduct at Dr. Bejjani's pain management practice about which Ms. Stell testified was not "sufficiently similar" to permit the jury to draw the inferences of knowledge, intent, and/or lack of mistake advocated by the Government. In particular, defendant claims that "[w]ithout any documentary or other evidence that false billing ever occurred at the prior physician's office, there is no way that the billing at that physician's office could have provided knowledge of Medicare's 'incident to' guideline." Def.'s Mem., ECF No. 96–1, 9.

In making this argument, Meislin relies on *United States v. Groysman,* a case where the trial court considered the admissibility of "documentary evidence of the billing practices and history of [the defendant's] former employer in order to prove her knowledge of intent to defraud in her capacity with a subsequent employer." No. 10CR459 (SJ)(RML), 2011 WL 6131286, at *2 (E.D.N.Y. Dec. 8, 2011). As the *Groysman* Court explained: "[p]ut another way, the government [sought] to establish that because invoices and claims were processed in a particular way at [the former employer's business], [the defendant] must have intended to process them in that same way while working for [her current employers]." *Id.*

The *Groysman* Court rejected the Government's proffer, concluding that "[e]ven assuming the invoices and claims were processed identically in both alleged schemes, the government's position would amount to a separate trial to prove the earlier alleged scheme to have in fact been a scheme. Only then could a comparison be made between the two, and even then, there would first have to be testimony by [the defendant] that she didn't or couldn't understand the operation of the scheme alleged in this indictment." 2011 WL 6131286, at *2 (collecting cases).

But *Groysman,* which Meislin contends is "controlling" on this issue, is distinguishable. The Government did not seek to introduce any documentary evidence of billing that occurred at Dr. Bejjani's practice in an effort to show that Meislin "must have intended to process [bills at Upstate Pain Management] in that same way." 2011 WL 6131286, at *2. Nor was it required to establish any actual instances of "false billing" at the Bejjani medical practice as some kind of prerequisite to admissibility under this rule. *Scott,* 677 F.3d at 78 ("Rule 404(b) extends to non-criminal acts or wrongs....").

Instead, the Government introduced Ms. Stell's testimony in response to the defense's central claim that, in essence,

Medicare's billing regulations were exceedingly complex and that, whatever actions Meislin took with regard to submitting the bills at issue in this case, those actions were not taken with knowledge of their wrongfulness or with a specific intent to defraud Medicare. *See, e.g.,* Trial Transcript at 31–33 (discussing the complexity of CPT codes and noting defendant "was not a certified coder" and that she "did not have the training that medical professionals or coders have"). Defendant presses this theory by asserting that Ms. Stell's testimony is irrelevant because the alleged scheme at issue in this case "did not involve billing Medicare for services that were not rendered" at all, but rather "centered around a Medicare ["incident to"] guideline allowing physician assistants ("PA") and nurse practitioners ("NP") to bill under the physician's Medicare identifier." Def.'s Mem., ECF No. 96–1, 9.

But as the Government noted in summation, "every bill that went out of that Upstate Pain Management office in Utica that billed under Doctor Kuthuru's provider number on days when he wasn't even in New York was false." Trial Transcript at 694. In other words, while defendant may be technically correct to argue that a licensed medical professional may have "rendered" services to patients at Upstate Pain Management on days when Dr. Kuthuru was not in New York (given the presence of a PA or NP), the Government's theory of the case was that Medicare was, in fact, being billed in a certain way for services that were not actually being "rendered" in that way—every bill which incorrectly indicated Dr. Kuthuru was present when he was not in New York constituted an instance in which the service billed for was not "rendered" in the relevant sense of the term.

Therefore, the important issue, and the one primarily in dispute at trial, was whether Meislin's conduct amounted to

more than just the actions of an employee mistakenly submitting bills with improper codes and rose to the requisite level of knowledge of unlawfulness and an intent to execute, or attempt to execute, a scheme to defraud. *See* Trial Transcript at 37 ("And the simple question in this case is why would [defendant], an employee, have any interest in deceiving Medicare ... ?"); *id.* at 705 ("[Billing] is highly regulated and complex. And the government has tried to grossly oversimplify it in this case."); *id.* at 710 ("[Defendant] did not know that Upstate Pain Management cannot bill under [Kuthuru's] Medicare identifier when a PA or a nurse practitioner saw the patient."); *id.* ("The government has to prove to you, again, that [defendant] knew about the [incident to] guideline and that she fully understood it and that she caused the billing to occur without meeting all of the requirements." "[Defendant] did not know about [the incident to] guideline....").

To that end, evidence tending to show, as Ms. Stell's did, that Meislin had done the exact same thing in the past—submitted bills indicating a doctor was present when, in fact, he was not—and likewise indicated knowledge of the wrongfulness of such actions is certainly "sufficiently similar" to permit the jury, if it so desired, to draw the sort of inference advocated by the Government—that Meislin had knowledge of its wrongfulness when she worked for Dr. Bejjani, and she possessed the same such knowledge when she worked for Dr. Kuthuru.

█ Alternatively, Meislin claims her conduct at the Bejjani medical practice is irrelevant because it "took place more than three years before the charged conduct and was wholly unsubstantiated." Def.'s Mem. at 10. Of course, a trial court "may exclude older acts if they have become 'too attenuated' to be relevant or too remote to

render the witness's memory reliable." *Curley*, 639 F.3d at 59.

But that is not the case here. The relatively straightforward conduct at the Bejjani medical practice occurred just three years before the conduct at issue in this ·case. Likewise, there was no indication that Ms. Stell's memory had been rendered unreliable. In sum, these concerns, along with Meislin's protestations regarding "lack of corroboration," may have been proper subjects for cross-examination, but are not a basis for exclusion. *See United States v. Mostafa*, 16 F.Supp.3d 236, 253 (S.D.N.Y.2014) (noting that "the fact that 'other act' evidence occurred well before a charged crime or even well after the crime did not defeat the required finding of similarity and connection" and collecting cases). Accordingly, Ms. Stell's testimony was sufficiently relevant to the facts in dispute.

### iii. *Prejudice*

 Meislin also argues the prejudicial effect of Ms. Stell's testimony far outweighed its probative value. In particular, defendant argues she "could not effectively defend herself against this eleventh hour allegation of involvement in a wholly separate fraudulent billing scheme" that "took place more than three years before the charged conduct" and "lacked any substantiation or corroboration whatsoever." Def.'s Mem. at 10.

 Even if the 404(b) evidence is both offered for a proper purpose and relevant, "the district court must determine. if its potential for unfair prejudice substantially outweighs its probative value." *Curley*, 639 F.3d at 57; *see also* FED. R. EVID. 403. "Evidence is unfairly prejudicial when 'it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence.'" *Id.* (quoting *United States v. Massino*, 546 F.3d 123, 132 (2d Cir.2008)). In the 404(b)

context, evidence creates a prejudicial effect warranting exclusion if tends "to prove a fact not in issue or 'to excite emotions against the defendant.'" *Id.* (quoting *United States v. Figueroa*, 618· F.3d 934, 943 (2d Cir.1980)).

Meislin's continued insistence that the Rule 404(b) evidence at issue was the Government's attempt to introduce evidence of some prior, uncorroborated billing scheme does not warrant its exclusion on the basis of prejudice. As the Government explained at oral argument, it was not attempting to introduce Ms. Stell's testimony as evidence that certain bills submitted by the Bejjani medical practice constituted a "scheme"; rather, it believed defendant's inculpatory statements to Ms. Stell to the effect that she knew of the wrongfulness of billing in a certain manner were probative on the issues of her knowledge and intent.

 "[A]ll evidence is by definition prejudicial; the question is whether that prejudice outweighs its value." *Mostafa*, 16 F.Supp.3d at 258 (citation omitted). Ms. Stell's testimony both tended to prove a fact in issue and described precisely the type of conduct charged in the indictment. It was no more "sensational or disturbing than the crimes with which [Meislin] was charged." *Curley*, 639 F.3d at 59 (quoting *United States v. Roldan–Zapata*, 916 F.2d 795, 804 (2d Cir.1990)). Accordingly, the danger of unfair prejudice was not substantially outweighed by the probative value of Ms. Stell's testimony.

### 2. *Medicare Claim Summaries*

 Meislin next argues the admission of Government's Exhibits 50 and 42 into evidence deprived her of her right to confront the evidence against her.

Government's Exhibit 50 contains the billing history submitted from Upstate Pain Management between November 1, 2009, and May 31, 2012, to Safeguard Ser-

vices, LLC, an independent contractor hired by Medicare to, inter alia, conduct fraud investigations. *See* Trial Transcript at 383, 402. Government's Exhibit 42, which is derived from the voluminous data contained in Government's Exhibit 50, contains only those claims submitted by Upstate Pain Management under CPT codes 99214 and 99215. *Id.* at 388–89. This exhibit further highlighted those claims that were submitted by Upstate Pain Management during time periods when Kuthuru's debit and ATM cards were being used outside New York State. *Id.* at 390.

The Government was permitted, over defendant's objection, to introduce these exhibits into evidence pursuant to Federal Rules of Evidence 803(6) and 902(11). *See* Trial Transcript at 68–71, 389 ("[W]hat I am asking for is the Court to rule on whether these business records ... of regularly conducted business activity, can be admitted into evidence through the use of the certification from a records custodian under the rules of evidence."); *see also United States v. Komasa,* 767 F.3d 151, 155 (2d Cir.2014) (noting these two rules are "designed to work in tandem" and create a procedure that can, in certain circumstances, avoid "the expense and inconvenience of producing time-consuming foundation witnesses").

Meislin first argues these exhibits should have been excluded because the Government failed to provide the defense with the Health Care Financing Administration ("HCFA") Forms for the relevant time period. Def.'s Mem. at 11. However, the Government represents that it provided the defense with the HCFA Forms related to the Medicare claims alleged in the indictment. Gov.'s Mem. at 6 (citing Trial Transcript at 403–04, 453–54).

Likewise, the Government further represented that it had provided the contents of Exhibit 50 to the defense pre-trial. Trial Transcript at 69 ("The contents of Exhibit 50 in its entirety was provided to the defense in discovery on a disk ... quite some time ago."). But even if defendant's claim is nevertheless accurate, defendant fails to articulate how these are the "extraordinary circumstances" that would warrant the grant of her Rule 33 motion.[4]

■ Meislin's further claim that Exhibit 42 was an improper summary chart is also rejected. Federal Rule of Evidence 1006, an exception to the best evidence rule, permits the use of a summary to "prove the content of voluminous writings ... that cannot be conveniently examined in court." FED.R.EVID. 1006. Defendant, citing several out-of-circuit cases, contends this exhibit failed to meet the six foundational requirements imposed as a prerequisite to admissibility under this rule. Def.'s Mem. at 13.

However, as the Government notes, the Second Circuit's functional approach to this rule merely requires the trial court to satisfy itself that the proffered exhibit is "based upon and fairly represent[s] competent evidence already before the jury." *United States v. Blackwood,* 366 Fed. Appx. 207 (2d Cir.2010) (summary order) (affirming district court's admission of charts prepared by government agents summarizing certain phone records (citation omitted)). Government's Exhibit 42, which contains a subset of information taken from Government's Exhibit 50, readily satisfies this requirement. Accordingly, defendant's motion for a new trial on this ground will be denied.

---

4. Meislin's related claim regarding the Government's purported failure to provide the defense with the certification fails for the same reason.

### 3. *Aiding and Abetting*

██ Meislin also argues the jury was improperly given an "aiding and abetting" instruction because "there was insufficient evidence to prove [she] knew anyone was committing an offense against the United States." Def.'s Mem. at 15.

The crime at issue here, health care fraud, indicates that "[w]hoever knowingly and willfully executes, or attempts to execute, a scheme or artifice . . . to defraud any health care benefit program; or . . . to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both." 18 U.S.C. § 1347.

Under 18 U.S.C. § 2, the aiding and abetting statute, "a defendant may be convicted of aiding and abetting a given crime where the government proves that the underlying crime was committed by a person other than the defendant, that the defendant knew of the crime, and that the defendant acted with the intent to contribute to the success of the underlying crime." *United States v. Hamilton*, 334 F.3d 170, 180 (2d Cir.2003) (citations omitted).

The Government's evidence at trial tended to establish that Dr. Kuthuru knowingly and willfully caused bills to be submitted from his medical practice falsely representing he was present at Upstate Pain Management in New York while he was actually in Las Vegas. And as discussed above and in greater detail below, the evidence further tended to show that Meislin was aware that submitting such bills would be improper and that she nevertheless continued to submit them despite this knowledge. This evidence, if credited by the jury, was a sufficient basis on which to find defendant criminally liable under an aiding and abetting theory. Accordingly, defendant's motion with respect to this issue will be denied.

### B. *Motion for Judgment of Acquittal*

██ Rule 29(a) provides that a trial court must enter a judgment of acquittal for "any offense for which the evidence is insufficient to sustain a conviction." FED. R.CRIM.P. 29(a). However, a trial court considering such a motion must be "careful to avoid usurping the role of the jury." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir.2003) (citation omitted). Unlike Rule 33, "Rule 29(c) does not provide the trial court with an opportunity to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir.1999) (citation omitted). Rather, "deference must be given 'to the jury's assessment of witness credibility and the jury's resolution of conflicting testimony.'" *United States v. McGinn*, 941 F.Supp.2d 260, 263 (N.D.N.Y.2013) (quoting *United States v. Glenn*, 312 F.3d 58, 64 (2d Cir.2002)).

██ Consistent with this theme of deference, "[t]he evidence must be viewed in the light most favorable to the government, with all reasonable inferences drawn in its favor." *McGinn*, 941 F.Supp.2d at 263. "Direct evidence is not required; '[i]n fact, the government is entitled to prove its case solely through circumstantial evidence, provided, of course, that the government still demonstrates each element of the charged offense beyond a reasonable doubt.'" *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir.2008) (citation omitted).

██ Indeed, "a jury verdict must be upheld if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"

*McGinn,* 941 F.Supp.2d at 263 (quoting *United States v. Cote,* 544 F.3d 88, 98 (2d Cir.2008)). "In other words, the court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is 'nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" *Guadagna,* 183 F.3d at 130 (quoting *United States v. White,* 673 F.2d 299, 301 (10th Cir.1982)).

### 1. *Health Care Fraud*

 Meislin first argues the Government's evidence failed to show she was aware of Medicare's "incident to" billing requirements. Def.'s Mem. at 20. But as the Government points out, the testimony elicited at trial, if credited by the jury, was sufficient to establish defendant's awareness of Medicare's billing requirements, including those relevant to the "incident to" regulation.

For instance, Ms. Conley, a Medicare fraud investigator, testified that she spoke to Meislin in 2012 as part of a Medicare audit of Upstate Pain Management. Trial Transcript at 390–94, 432. Ms. Conley testified that the purposes of such audits included, inter alia, explaining Medicare policies and procedures to employees and reviewing the billing history of the medical practice under audit. *Id.* at 391–92 ("We go over Medicare policies and procedures based on claims that we have—based on the billing history that we have reviewed."). Ms. Conley further testified that she spoke directly to defendant regarding the "incident to" billing. *Id.* at 392. Importantly, Ms. Conley testified that:

A. . . . . When we showed up on site at the [Upstate Pain Management] location in Fulton, there was no provider there. There was a PA by the name of Terry Solomon there who was treating patients without the doctor.

I spoke to [defendant], and I explained to her that that is a violation of Incident To. She informed me that she was the billing manager. She knew all about Medicare. She was very fluent with Medicare. She did all of the billing, and they were tired of being harassed by Medicare.

I explained to her that we weren't there to harass her, just to verify services. And that she again, reiterated to me she knew Medicare. She was very familiar with Medicare. I explained to [defendant] that I would be in the Utica office to see her the following day.

Trial Transcript at 392–93. As promised, Ms. Conley met with Meislin the following day at Upstate Pain Management's Utica office. Ms. Conley testified that:

A. . . . . Again, we went over—I stated why I was there. She again stated to me—she was adamant that she was the billing manager. She stated to me that she was very familiar with Medicare. She had been doing billing for a long period of time. She visits the Medicare website frequently and attends training for Medicare frequently. We also reviewed Medicare policies . . . .

Q. Did you discuss with her again this Incident To regulation?

A. We did discuss Incident To. I did explain that in order for the PA to be rendering services . . . . I explained to her that if the provider is billing under [a physician's identifier]—he has to—it requires direct supervision.

Trial Transcript at 393–94. Indeed, Ms. Conley reiterated substantially the same testimony during cross-examination. *Id.* 431–32. Ms. Conley also explicitly testified "I said then you [defendant] would know that if the PA is here and there is no

doctor here, that that is a violation of Incident To. She said, yes, yes, I know that. I am well aware of that." *Id.* at 432.

Meislin claims Ms. Conley's testimony is not credible and points out that her written interview notes memorializing her conversation with defendant do not reflect such a discussion, but that is a subject for cross-examination, not a Rule 29 motion. *See, e.g., United States v. Autuori*, 212 F.3d 105, 118 (2d Cir.2000) ("It is not for the court on a Rule 29 motion to make credibility determinations: '[A] trial judge [is] not entitled to set aside [a] guilty verdict simply because he would have reached a different result if he had been the fact-finder.'" (quoting *United States v. Cunningham*, 723 F.2d 217, 232 (2d Cir. 1983))).

Meislin further claims that a Tenth Circuit case, *United States v. Rufai*, is sufficiently analogous to the facts here to warrant a grant of her Rule 29 motion. Def.'s Mem. at 19 (citing 732 F.3d 1175, 1192–94 (10th Cir.2013)). In *Rufai*, an unindicted third party, Joshua Ohaka, knowingly filed fraudulent Medicare claims on behalf of a medical equipment company set up by the defendant-owner on trial. 732 F.3d at 1192. The Government sought to show that the defendant-owner possessed both knowledge and an intent to participate in Mr. Ohaka's fraudulent scheme by introducing testimony of an employee of the company who claimed to have fielded several telephone calls from customers indicating they had not actually received their medical equipment. *Id.* at 1193. This employee testified that when she passed this information along to the defendant-owner, he indicated "he would speak with Mr. Ohaka about it." *Id.* The panel rejected this testimony, as well as similarly benign irregularities, as insufficient evidence of knowledge of the ongoing health care fraud scheme being carried out by Mr. Ohaka to support the jury verdict against

the defendant-owner of the medical equipment company. *Id.* at 1193–94.

But like *Groysman, Rufai* is distinguishable on its facts. As the Government correctly notes, the *Rufai* panel focused on the Government's utter failure to offer evidence showing anything more than the defendant-owner's mere association with Mr. Ohaka, the source of the fraudulent billing scheme. 732 F.3d at 1193. Indeed, the *Rufai* Court concluded that the Government had failed to present any evidence to indicate the defendant-owner had ever interacted with Medicare directly or had even been present when any Medicare billing occurred. *Id.*

Of course, that is not the case here. Virtually every other employee of Upstate Pain Management's Utica office testified that Meislin was directly responsible for submitting bills to Medicare. *See, e.g.,* Trial Transcript at 590, 601–02, 606–07. Likewise, Ms. Conley's testimony, along with Ms. Stell's statements, established that defendant was familiar with Medicare billing in a general sense and possessed knowledge of the requirements of the "incident to" regulation in particular.

In sum, drawing all reasonable inferences in the Government's favor, the evidence at trial provided a sufficient basis on which the jury could find the elements of § 1347 satisfied. Accordingly, defendant's motion for a judgment of acquittal with respect to these claims will be denied.

### 2. *Conspiracy*

 Finally, Meislin argues the Government's evidence failed to show she agreed with Dr. Kuthuru to commit Medicare fraud or that she was aware of, and took action in furtherance of, the conspiracy's objectives. Def.'s Mem. at 23–24.

The Second Circuit has repeatedly "emphasized the importance of deference to

the jury's findings in the conspiracy context 'because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel.' " *United States v. Wahl,* 563 Fed.Appx. 45, 47 (2d Cir.2014) (summary order) (quoting *United States v. Santos,* 541 F.3d 63, 70 (2d Cir.2008)).

The indictment charged Meislin with conspiracy to knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, and make and use a materially false writing and document knowing the same to contain a materially false, fictitious, and fraudulent statement and entry in connection with the delivery of or payment for health care benefits. *See* 18 U.S.C. §§ 371, 1035. As discussed above, the evidence adduced at trial was sufficient to establish that defendant, who oversaw billing operations and was aware of the requirements for properly billing under Medicare's "incident to" regulation, caused Medicare claims to be submitted falsely representing Kuthuru had been present at times when he was not even in New York.

The jury was also free to conclude, based on the testimony of the various witnesses at trial, including the rather dramatic testimony by Brittany Hosea, that these submissions were the result of an underlying agreement between Meislin and Dr. Kuthuru. *See, e.g.,* Trial Transcript at 225–26, 239–40. Because a rational finder of fact could conclude the elements of conspiracy were met, defendant's motion for a judgment of acquittal on this count will be denied.

### III. *CONCLUSION*

Meislin's assertions of erroneous evidentiary rulings and an improper jury instruction, considered separately or in the aggregate, are insufficient to warrant granting her Rule 33 motion. Likewise, viewing the evidence in the light most favorable to the Government, there was sufficient evidence for a rational jury to conclude, as it evidently did, that defendant committed the crimes charged.

Therefore, it is

ORDERED that

1. Defendant Meislin's motion for a new trial pursuant to Rule 33 is DENIED; and

2. Defendant Meislin's motion for a judgment of acquittal pursuant to Rule 29 is DENIED.

IT IS SO ORDERED.