08-5840-cr
USA v. Brown (Blackwood)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, at 500 Pearl Street, in the City of New York, on the 17th day of February, two thousand ten.

Present:    ROBERT A. KATZMANN,
            GERARD E. LYNCH,
                        *Circuit Judges*,
            TIMOTHY C. STANCEU,
                        *Judge.*[*]

_____

UNITED STATES OF AMERICA,

                        *Appellee*,

                        - v -                          No. 08-5840-cr

PHILIP BLACKWOOD,

                        *Defendant-Appellant,*

DAVID BROWN, also known as COUNTRY, JERMAINE
MIKELL, also known as N.Y.P.D. CASH, ERNEST HOLLMAN,

                        *Defendants.*[**]

_____

[*] The Honorable Timothy C. Stanceu, of the United States Court of International Trade, sitting by designation.

[**]    The Clerk of the Court is directed to amend the official caption as set forth above.

For Defendant-Appellant: PETER TILEM, Tilem & Campbell, P.C., White Plains, N.Y.

For Appellee: JACK DENNEHY, Assistant United States Attorney (Emily Berger, Assistant United States Attorney, *on the brief*), *for* Benton J. Campbell, United States Attorney for the Eastern District of New York, Brooklyn, N.Y.

Appeal from the United States District Court for the Eastern District of New York (Townes, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Philip Blackwood appeals from a November 26, 2008 judgment of the United States District Court for the Eastern District of New York (Townes, *J.*), convicting Blackwood, following a jury verdict, of conspiring to distribute and possess with intent to distribute 50 or more grams of cocaine in violation of 21 U.S.C. §§ 846, 841(b)(1)(A).  We assume the parties' familiarity with the underlying facts, the procedural history of this case, and the specification of issues on appeal.

Blackwood principally argues that the government's evidence at trial was insufficient to sustain his conviction because the government "produced no witnesses who saw [Blackwood] sell drugs, [and] no tapes of [Blackwood] talking about drugs," and because a co-conspirator signed a sworn statement noting that the drugs found in Blackwood's vehicle belonged to someone else.  A defendant making an insufficiency claim pursuant to Fed. R. Crim. P. 29 "bears a very heavy burden," *United States v. Desena*, 287 F.3d 170, 177 (2d Cir. 2002), and a jury's verdict must be upheld if any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000)

2

(quotation marks omitted). When considering a defendant's Rule 29 motion for a judgment of acquittal, a court must "view[] all of the evidence in the light most favorable to the government," *United States v. Aleskerova*, 300 F.3d 286, 292 (2d Cir. 2002), and "resolve all issues of credibility in favor of the jury's verdict." *Desena*, 287 F.3d at 177 (quotation marks omitted). In doing so, a court must credit "every inference that the jury might have drawn in favor of the government." *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir. 1998) (internal quotation marks omitted); *see United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001) (noting that "the task of choosing among competing, permissible inferences is for the fact-finder, not for the reviewing court"). On appeal, we review the district court's denial of a Rule 29 motion *de novo*, applying the same standards applied by the district court. *United States v. Reyes*, 302 F.3d 48, 52-53 (2d Cir. 2002).

Here, the government's evidence, when viewed in the light most favorable to the government, was more than sufficient to permit a rational jury to conclude that Blackwood was guilty of the charged crime. Blackwood nevertheless appears to take issue with the fact that the government failed to present any direct evidence demonstrating that Blackwood was personally involved in any drug sales. We have long held, however, that "[p]ieces of evidence must be viewed not in isolation but in conjunction," *United States v. Miller*, 116 F.3d 641, 676 (2d Cir. 1997), and that a jury's verdict may thus "be based entirely on circumstantial evidence." *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995). It was thus wholly permissible for the government to rely on circumstantial evidence, which was of no less probative value than direct evidence. *United States v. Glasser*, 443 F.2d 994, 1007 (2d Cir. 1971).

Blackwood further contends that the evidence merely showed that he was present at the

3

scene of a crime, rather than actually involved in criminal activity. Although we have "repeatedly emphasized" that a defendant's "mere presence" at a crime scene or "association with conspirators" does not establish "intentional participation in the conspiracy, even if the defendant has knowledge of the conspiracy," *United States v. Samaria*, 239 F.3d 228, 235 (2d Cir. 2001), *overruled on other grounds by United States v. Huezo*, 546 F.3d 175, 180 n.2 (2d Cir. 2008), a defendant's knowing and willing participation in a conspiracy nevertheless may be inferred from his "presence at critical stages of the conspiracy that could not be explained by happenstance," or by a "lack of surprise when discussing the conspiracy with others." *Aleskerova*, 300 F.3d at 293. It may also be established by "evidence that the defendant participated in conversations directly related to the substance of the conspiracy[,] possessed items important to the conspiracy," *id.*, or engaged in acts "exhibit[ing] a consciousness of guilt." *United States v. Gordon*, 987 F.2d 902, 907 (2d Cir. 1993). Here, the evidence showed that Blackwood's presence at critical stages of the conspiracy could not be explained by happenstance and that Blackwood demonstrated his consciousness of guilt by asking his co-conspirators to take responsibility for the crime, thus permitting the jury to infer Blackwood's knowing and willing participation in the charged conspiracy.

Blackwood next argues that the district court improperly permitted David Brown, the government's cooperating witness, to testify that Blackwood told him that he could not afford to take the "fall" for the drug deal because "he was on parole." We review a district court's evidentiary rulings for abuse of discretion. *United States v. Lombardozzi*, 491 F.3d 61, 78-79 (2d Cir. 2007). Accordingly, "so long as the district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed only if it is

arbitrary or irrational." *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006).

Moreover, evidentiary rulings are subject to harmless error analysis, Fed. R. Crim. P. 52, and even if there was an abuse of discretion, we will reverse "only if the government is unable to demonstrate that the error was harmless, that is, that the error did not affect the defendant's substantial rights or influence the jury's verdict." *United States v. Madori*, 419 F.3d 159, 168 (2d Cir. 2005) (quoting *United States v. Tubol*, 191 F.3d 88, 96-97 (2d Cir. 1999)).

Here, even assuming that the district court erred in admitting the challenged evidence, we conclude that any such error was harmless. The testimony in question only comprised a very small portion of the government's evidence, and the government did not draw any undue attention to the evidence in its summation. Further, "to the extent there was any risk of unfair prejudice, the district court satisfactorily reduced that possibility with a thorough and carefully worded limiting instruction." *United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006). Given that there is no indication that there was "an overwhelming probability that the jury [was] unable to follow the court's instructions," or that "the evidence [was] devastating to the defense," *United States v. Colombo*, 909 F.2d 711, 715 (2d Cir. 1990) (internal quotation marks omitted), we can "conclude with fair assurance that the evidence did not substantially influence the jury," *United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009) (internal quotation marks omitted).

Blackwood also takes issue with the district court's decision to permit David Brown to testify that the sounds on a tape recording were that of the Broadway elevated subway train in the Bushwick section of Brooklyn.

Pursuant to Fed. R. Evid. 701, lay opinion testimony generally is admissible if the witness's opinions or inferences are "(a) rationally based on the perception of the witness, (b)

5

helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." We review a district court's decision to admit lay opinion testimony for abuse of discretion, *United States v. Garcia*, 413 F.3d 201, 210 (2d Cir. 2005), and we will reverse only if an error has a "substantial and injurious effect or influence" on the jury's verdict. *United States v. Dukagjini*, 326 F.3d 45, 62 (2d Cir. 2003) (internal quotation marks omitted); *see* Fed. R. Evid. 103(a).

As an initial matter, we are doubtful as to whether Brown's testimony regarding the sounds on the tape recording were rationally based on his perception and a product of reasoning processes familiar to the average person. Indeed, Brown was not present for the recorded conversation and thus had no personal knowledge as to where that conversation took place. Moreover, although Brown testified that he used to live in an apartment ten feet from the elevated train for seven years, it strains credulity that he would be able to pinpoint the location of an elevated train solely based on an audio recording of the sounds made by that train.

In any event, we are satisfied that any error (assuming that there was error) was harmless. The government offered Brown's testimony regarding the location of the train "to confirm to the jury where the [drug] sale took place." Brown's testimony in this respect was corroborated by the tape recording of the entire transaction, the DEA agent's testimony concerning his field observations, and Brown's testimony that he personally brokered the drug deal, which, as demonstrated in the taped conversations between the co-conspirators, was set to take place on the corner of Broadway and Marion Street, under the elevated subway tracks. Although Blackwood contends that Brown's testimony identifying the train sound "was critical to the Government's

6

case because it placed [Blackwood] at the scene of the August 2006 drug transaction," Blackwood's voice is heard on the recording of that deal, thus definitely linking Blackwood to the charged conduct. Indeed, as the government correctly notes, this conversation alone was sufficient to demonstrate that Blackwood was at some location engaging in the charged conduct. Accordingly, because upon review of the entire record we can be confident that any evidentiary error "did not influence the jury, or had but very slight effect, the verdict and the judgment should stand." *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

Blackwood last argues that the district court improperly admitted into evidence charts prepared by government agents that summarized certain phone records. Pursuant to Fed. R. Evid. 1006, "[t]he contents of voluminous writings . . . which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." We have "regularly affirmed the use of such charts." *United States v. Yousef*, 327 F.3d 56, 158 (2d Cir. 2003). Where, as here, the government introduces summary charts, "the court must ascertain with certainty that they are based upon and fairly represent competent evidence already before the jury." *United States v. Conlin*, 551 F.2d 534, 538 (2d Cir. 1977) (internal quotation marks omitted). We review the district court's admission into evidence of summary charts for abuse of discretion. *United States v. Pinto*, 850 F.2d 927, 935 (2d Cir. 1988).

Here, we see no error in the district court's decision to admit the government's summary charts into evidence. *First*, the government's summary charts set forth detailed information concerning well over 100 telephone calls spanning three days between four individuals. In other words, the charts summarized information that otherwise would have been difficult for the jury to synthesize and evaluate, thus falling well within the purview of Rule 1006. *Second*, the

summaries were helpful to the jury in its evaluation of the evidence because they showed the pattern and timing of telephone calls among the co-conspirators on the three crucial days of the charged conspiracy. *Third*, the charts were "based upon and fairly represent competent evidence already before the jury." *Conlin*, 551 F.2d at 538 (internal quotation marks omitted). Blackwood does not contend that the charts contained any inaccurate information that potentially could have misled the jury, and there is no indication that the charts were in any way cumulative or prejudicial. The charts' accuracy was confirmed by Agent Leardo, who testified that he was personally involved in compiling the charts, and that, except for the accidental omission of one phone call, the charts "fairly and accurately depict[ed] a summary of the cell phone records which are in evidence relative to [the co-conspirators] on those three dates." In such circumstances, we see no error in the district court's determination. *See Pinto*, 850 F.2d at 935.

Further, to the extent that there was a "possibility that the jury would accept such summaries as documentary fact," *id.*, "any possible prejudice was cured by the District Court's limiting instruction stating that the charts were not evidence; they were only graphic demonstrations of the underlying evidence, and the jury had to determine for itself whether they fairly and accurately summarized the underlying evidence." *Yousef*, 327 F.3d at 158 (internal quotation marks omitted); *Pinto*, 850 F.2d at 935. Finally, although Blackwood argues that there is no way for us to determine how the admission of the summary charts into the jury room affected the jury's deliberations, the trial transcript makes clear that the charts were never provided to the jury. And even if we were to assume (contrary to fact) that the charts did go to the jury, we would find, as we have previously found, "no error in [a district court's] decision to allow [] properly admitted summary charts into the jury room during deliberations." *Pinto*, 850

8

F.2d at 935.

We have considered Blackwood's remaining arguments and find them to be without merit. Accordingly, for the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:<br>
CATHERINE O'HAGAN WOLFE, CLERK