UNITED STATES of America,

v.

**Joseph TIGANO, III, Defendant.**

**No. 1:08–CR–281 EAW.**

United States District Court,
W.D. New York.

Signed July 8, 2015.

Thomas S. Duszkiewicz, U.S. Attorney's Office, Buffalo, NY, for United States of America.

Marianne Mariano, Federal Public Defender, Cheryl Meyers Buth, Buffalo, NY, Daniel J. Henry, Jr., Villarini & Henry, L.L.P., Hamburg, NY, Thomas C. Farley, Derby, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

## BACKGROUND

Defendant Joseph Tigano, III (hereinafter "Tigano III" or "Defendant") was charged by indictment with the following counts: (1) manufacturing 1,000 or more marijuana plants in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A) and 18 U.S.C. § 2; (2) possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (3) maintaining a drug-related premises at 30 Mill Street, Cattaraugus, New York, in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2; (4) conspiracy to commit drug crimes in violation of 21 U.S.C. § 846; (5) possession of firearms in furtherance of drug-trafficking crimes in violation of 18 U.S.C. §§ 924(c)(1) and 2; and (6) unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). (Dkt. 1).

Defendant's father, Joseph Tigano, Sr. (hereinafter "Tigano Sr.") was also charged in the first five counts of the indictment, and on November 25, 2013, he entered a plea of guilty to a one-count superseding information that charged him with manufacturing 50 or more marijuana plants in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) and 2. (Dkt. 165 & 166). Un-

like his father, Tigano III elected to proceed to trial.

A jury trial commenced on May 5, 2015. (Dkt. 227). At the close of the Government's proof, Defendant made a motion pursuant to Fed.R.Crim.P. 29, requesting that the Court dismiss count 4 (the conspiracy charge) and count 5 (possession of firearms in furtherance of drug-trafficking crimes). (Dkt. 230). The Court denied the motion. (*Id.*). On May 8, 2015, the jury convicted Defendant of counts 1 through 4 and count 6, but acquitted Defendant of count 5. (Dkt. 236 & 237).

On May 14, 2015, Defendant filed a motion pursuant to Fed.R.Crim.P. 29 and 33, to vacate his conviction, enter a judgment of acquittal, and grant a new trial relating to count 4—the conspiracy conviction. (Dkt. 234). Defendant argues that there was legally insufficient evidence upon which to convict him of conspiring with his father, Tigano Sr., as charged in count 4. (Dkt. 234 at ¶ 3). Specifically, Defendant argues that "[w]ithout sufficient proof that [Defendant's] father was a member of the conspiracy, [Defendant] himself cannot be convicted of the conspiracy charged in count 4 since by its very nature a conspiracy requires the participation of at least two people." (*Id.* at ¶ 30).

The Court scheduled a response date and oral argument (Dkt. 235), and the Government filed its response on June 5, 2015 (Dkt. 241). The Court held oral argument on June 24, 2015, at which time the Court indicated that it intended to deny the motion, but it would issue a written Decision and Order explaining the basis for its decision. (Dkt. 250).

### RULE 29 STANDARD

Fed.R.Crim.P. 29(c) provides that "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict...." Fed.R.Crim.P. 29(c)(1). Defendant filed his

motion on May 14, 2015, six days following the return of the guilty verdict by the jury. Accordingly, Defendant's motion is timely.

The standard on a motion for a judgment of acquittal is stringent, and a defendant claiming that he was convicted based on insufficient evidence "'bears a very heavy burden.'" *United States v. Blackwood*, 366 Fed.Appx. 207, 209 (2d Cir.2010) (quoting *United States v. Desena*, 287 F.3d 170, 177 (2d Cir.2002)). "In considering a motion for judgment of acquittal, the court must view the evidence presented in the light most favorable to the government." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir.1999). Accordingly, "[a]ll permissible inferences must be drawn in the government's favor." *Id.*

"If *any* rational trier of fact could have found the essential elements of the crime, the conviction must stand." *United States v. Puzzo*, 928 F.2d 1356, 1361 (2d Cir.1991) (internal quotation and citation omitted) (emphasis in original). "The test is whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt." *Id.* (internal quotation and citations omitted). The evidence must be viewed "in its totality, not in isolation," *United States v. Huezo*, 546 F.3d 174, 178 (2d Cir.2008), "as each fact may gain color from others." *Guadagna*, 183 F.3d at 130. The Court may enter a judgment of acquittal only if the evidence that the defendant committed the crime is "nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Id.* (internal quotation and citation omitted).

A district court must be careful not to usurp the role of the jury. "Rule 29(c) does not provide the trial court with

an opportunity to 'substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury.'" *Id.* at 129 (quoting *United States v. Mariani,* 725 F.2d 862, 865 (2d Cir.1984)). "A jury's verdict will be sustained if there is substantial evidence, taking the view most favorable to the government, to support it." *United States v. Nersesian,* 824 F.2d 1294, 1324 (2d Cir.1987). The government is not required "'to preclude every reasonable hypothesis which is consistent with innocence.'" *United States v. Chang An–Lo,* 851 F.2d 547, 554 (2d Cir.1988) (citing *United States v. Fiore,* 821 F.2d 127, 128 (2d Cir.1987)). Further, a jury's verdict may be based entirely on circumstantial evidence. *See United States v. Martinez,* 54 F.3d 1040, 1043 (2d Cir.1995).

### RULE 33 STANDARD

 Defendant has also moved for a new trial, pursuant to Fed.R.Crim.P. 33, which allows a court to vacate a judgment and grant a new trial "if the interest of justice so requires." Fed.R.Crim.P. 33(a). In evaluating the sufficiency of the evidence for purposes of Rule 33, the Court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." *United States v. Ferguson,* 246 F.3d 129, 134 (2d Cir.2001). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Id.* "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33 . . ." *United States v. McCourty,* 562 F.3d 458, 475 (2d Cir.2009).

 "[M]otions for a new trial are disfavored in this Circuit," due to the strictness of this standard. *United States v. Gambino,* 59 F.3d 353, 364 (2d Cir.1995). A court will grant a new trial only "in the most extraordinary circumstances." *Unit-* *ed States v. Locascio,* 6 F.3d 924, 949 (2d Cir.1993). Indeed, to justify the granting of a Rule 33 motion, "a district court must find that there is a real concern that an innocent person may have been convicted." *McCourty,* 562 F.3d at 475 (internal quotation and citations omitted).

### ANALYSIS

 Where a defendant challenges a conspiracy conviction, "deference to the jury's findings is especially important . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *United States v. Santos,* 541 F.3d 63, 70 (2d Cir.2008) (internal quotation and citation omitted). It is well-established that a conspiracy will be supported by evidence in the record that permits the jury to find "(1) the existence of the conspiracy charged; (2) that the defendant had knowledge of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *Id.* (citations omitted). "Furthermore, in a conspiracy punishable under 21 U.S.C. § 841(b)(1)(A), the government must also prove (4) that it was either known or reasonably foreseeable to the defendant that the conspiracy involved the drug type and quantity charged." *Id.* at 70–71.

Based upon the testimony and evidence presented at trial, the Court finds that there was sufficient evidence for a reasonable jury to find Defendant guilty of conspiring to commit the drug offenses as charged in the indictment. Count 4 of the indictment charged as follows:

Between in or about November 2006, the exact date being unknown, and on or about the 8th day of July 2008, at Cattaraugus, New York, in the Western District of New York, and elsewhere, the defendants, JOSEPH TIGANO III and

JOSEPH TIGANO, SR., did knowingly, willfully and unlawfully combine, conspire and agree together and with others, known and unknown, to commit offenses against the United States, that is, violations of Title 21, United States Code, Sections 841(a)(1) and 856(a)(1) as set forth in Counts 1, 2 and 3 of this indictment, the allegations of which are incorporated herein by reference; all in violation of Title 21, United States Code, Section 846.

(Dkt. 1 at 3).

Defendant's challenge to his conviction on count 4 is focused on the alleged insufficiency of the proof with respect to Tigano Sr.'s alleged role and involvement in the conspiracy. For instance, Defendant argues:

> There was no proof at trial offered relative to an acknowledgment by Tigano's father of his participation in the conspiracy; nor whether his father benefited from the sale of marijuana, knew his son intended to sell marijuana, shared profits, or sold marijuana himself. There was no information regarding how long the father lived there, whether he participated in processing the marijuana or packaging it, or testimony regarding his medical condition generally or the extent to which it impaired his ability to enter into the alleged conspiracy.

(Dkt. 234 at ¶ 25). In other words, Defendant's argument about the insufficiency of the proof is directed to his father's alleged knowledge and involvement in the conspiracy, as opposed to Defendant's active participation in the conspiracy. Defendant's argument is misplaced. Defendant is focusing on the wrong defendant-his father, as opposed to himself.

As counsel conceded at the oral argument in this matter, the Government was not required to prove specifically that Defendant conspired with Tigano Sr. in order to be convicted on count 4, but rather, as instructed by the Court at the trial, the Government was required to prove that Defendant knowingly conspired with at least one other person. *See United States v. LoRusso,* 695 F.2d 45, 56 n. 8 (2d Cir. 1982) (in case where indictment had charged defendants with conspiring with each other and others unknown, "the fact that [defendant's] associates were not identified is no impediment to his conviction of conspiring with them" even if evidence was insufficient to support finding a conspiracy between the named defendants); *United States v. Sacco,* 436 F.2d 780, 783 (2d Cir.1971) (trial court's decision to permit the jury to consider whether or not the defendant conspired with "persons unknown," as charged in the indictment, was not improper). In other words, the jury was not required to specifically conclude that Tigano Sr. was involved in the drug-trafficking crimes in order to convict Defendant of the conspiracy charged in count 4.

■ Moreover, contrary to Defendant's contention, there was ample evidence introduced at trial indicating that Tigano Sr. was more than simply "present" at 30 Mill Street. Indeed, Defendant's own admissions plainly established his father's involvement in the drug conspiracy.

First, three witnesses testified that Defendant admitted that he and his father were responsible for the marijuana grow operation at 30 Mill Street. Drug Enforcement Administration ("DEA") Special Agent Gene Nana testified that when he was questioning Defendant, he admitted that he and his father "were responsible for growing marijuana," and that Tigano Sr. cared for, fertilized, and watered the plants. DEA Task Force Agent Cory Higgins similarly testified that Defendant admitted during an interview in the living room of 30 Mill Street following the arrest

that "he and his father were growing the marijuana." Further, Internal Revenue Service Special Agent Jaime Preston testified that Defendant told him that he purchased 30 Mill Street in 2000 or 2001, and began growing marijuana shortly thereafter. Defendant also stated that "once he began selling the marijuana that it became very difficult to stop," and that "he and his father were responsible for the growing and the selling of that marijuana that was in the building." Agent Preston also testified that Defendant said he and his father sold the marijuana in pound quantities.

Second, contrary to Defendant's contention, there was sufficient evidence from which a reasonable jury could have found that Tigano Sr. resided at 30 Mill Street, where the marijuana grow operation was located. Agent Higgins and Cattaraugus County Detective Kenneth Rice both testified that Tigano Sr. had a bedroom at 30 Mill Street, and was present when agents entered 30 Mill Street at 6:00 a.m. on July 8, 2008. Agent Higgins also testified that Tigano Sr.'s bedroom was cluttered, from which a jury could reasonably infer that he had resided in the bedroom for a significant period of time. Agent Higgins further testified that a marijuana processing room containing marijuana packaging materials and scales was located across the hall from Tigano Sr.'s bedroom.

■■■ Third, the evidence presented at trial established a highly sophisticated marijuana grow operation at 30 Mill Street. A jury may infer evidence of a conspiracy based on the sophistication and scale of a drug-trafficking operation. *See United States v. Armedo–Sarmiento*, 545 F.2d 785, 790 (2d Cir.1976) ("a jury might consider the very size of the operation and the quantity of drugs involved to be indicative of a large scale, continuing conspiracy."). Indeed, from the photographic evidence alone, a jury could reasonably infer

that a single individual could not have maintained the highly sophisticated marijuana grow operation on his own.

Here, the operation included rooms segregated by the different stages of the marijuana-growing process, including processing, cloning, and drying rooms. Agent Higgins testified that the grow operation filled four rooms of the basement. One room contained tall, mature marijuana plants, an apparatus used to transfer fertilizer, and a system for storing marijuana. Another room in the basement contained younger vegetation and larger plants for cloning, and an apparatus used for cloning. The system maintaining the growing conditions for the marijuana plants was highly sophisticated. Agent Higgins testified that he observed over 100 ballasts supplying light and duct work to regulate the temperature for the plants. The basement of 30 Mill Street was also cooled by two commercial-size air-conditioning units, and large four-foot fans hanging from the ceiling to circulate air. Feedings tubes were attached to the ceiling of the basement, running to the individual marijuana plants. In fact, medical equipment that was linked to Tigano Sr. was used to deploy nutrients into the marijuana growing system, further evidence from which the jury could deduce that Tigano Sr. was involved in and had knowledge of the goal of the conspiracy.

Agent Higgins testified that the grow operation extended beyond the basement of 30 Mill Street and overflowed into other areas of the building. Agent Higgins testified to the presence of heavy machinery to maintain the grow operation on other floors of 30 Mill Street, including mechanisms to de-leaf plants and remove unwanted debris from the plant buds. On the second floor of the building, agents discovered a cement mixer, two forklifts, and large cutting instruments, including chop and chainsaws. Further, Agent Hig-

gins testified that marijuana was stored, processed, and dried in a vault on the third floor of 30 Mill Street.

Based on the sophistication and large scale of the marijuana grow operation maintained at 30 Mill Street, a reasonable jury could find that persons other than just Defendant were involved in the illegal drug activities occurring there, and that Tigano Sr. was part of the drug-trafficking conspiracy alleged in the indictment.

There was also evidence at trial relating to the amount of marijuana produced at 30 Mill Street. For example, there was testimony and a finding by the jury that over 1,000 marijuana plants were grown at 30 Mill Street. Agent Higgins testified that a safe found on the premises contained under $10,000 in currency, and that Defendant stated that he sold approximately five pounds of marijuana per week outside of Cattaraugus. A reasonable jury could infer that based on this evidence, Tigano Sr. had knowledge that the large volume of marijuana produced at 30 Mill Street was being distributed to others.

Finally, there was evidence at trial that Defendant maintained through Key Bank a business and a personal bank account, and that some of the deposits into these accounts were proceeds from marijuana sales. Special Agent Preston testified that Defendant told him that "the cash that went into those ... was proceeds of marijuana sales," and Tigano Sr. was a joint account holder on the personal account.

### CONCLUSION

For the foregoing reasons, Defendant's motions for acquittal pursuant to Fed. R.Crim.P. 29 and a new trial pursuant to Fed.R.Crim.P. 33 are denied.

SO ORDERED.